## MONTILLY *vs.* HIS CREDITORS.

EASTERN DIS.
*May*, 1841.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

MONTILLY
*vs.*
HIS CREDITORS.

In order to constitute a fraud, two conditions are necessary; there must be the *intention* of defrauding, and the event or actual loss sustained by the creditors, to deprive the debtor of the benefit of the insolvent laws.

Where the charge of fraud is made against a ceding debtor, in order that the court may judge of the *nature* and *extent* of the fraud, and to determine whether the *acts* complained of come within the purview of the law, they should be clearly and distinctly specified in the written opposition; general allegations are not sufficient.

So where the allegations are mere matters of legal right, subject to be disputed and controverted in the *concurso*, they do not amount to a *fraud* against creditors within the meaning of the 22d, 23d and 24th sections of the act of 1817, and 10th section of the act of 1840, relating to insolvent debtors.

18L 383
44 19
18L 383,
46 1178
18L 383
48 1344
48 1462
49 78

This case comes up on an opposition to the bilan and petition of the plaintiff, making a voluntary surrender of his property to his creditors, and praying for the benefit of the insolvent laws. The opposing creditor, Louis Lefebre, charges the insolvent with making a transfer of certain property to his wife on the eve of insolvency, in fraud of his other creditors, and of this opponent in particular; and that he had not made a correct and faithful statement of his affairs; and had produced no books in court. He prays leave to file his opposition, and that the insolvent be found guilty of fraud, and dealt with according to law; and that in the meantime he be arrested and held to bail.

The insolvent pleaded the general issue, and averred there was no fraud, but that he had made a fair and correct statement of his affairs, and negatived the charge of fraud in every shape.

Upon the issue thus made up, the cause was submitted to a jury; who returned a verdict sustaining the fraud: and after a strenuous attempt to obtain a new trial, from judgment confirming the verdict, insolvent appealed.

The facts of the case are simple and fully detailed in the opinion of this court.

*Castera & Grivot*, for the opposing creditor, contended.

1. The proceedings on a charge of fraud are not conducted

EASTERN DIS.
May, 1841.

MONTILLY
vs.
HIS CREDITORS.

with the same rigidity and strictness, nor on the principles of criminal prosecutions. The party charging fraud, is only required to file his written deposition stating specially the facts on which he relies to maintain his charge.—Sec. 18, p. 429, Moreau's Digest, vol. 2, which has been done in this case.

2. The transfer or dation en paiement by Montilly to his wife, was made, as appears by the evidence, with the intention to defraud his creditors; he was bound to show that it was passed in good faith; it was giving her an unjust preference, if she had any claim at all, and this is fraud.—See sec. 24, vol. 2, Moreau's Digest, p. 431. Montilly in his schedule states that he made this sale or dation en paiement, at a time when he did not expect so soon to sue his creditors; he shows therefore that he had an intention to make a cession of property.—The transfer or dation took place only one month prior to his failure.

3. The court properly rejected the paper purporting to be a judgment rendered about twenty two years ago in Paris, (France) in favor of Madame Montilly, against her husband; it was not properly authenticated.

4. A sale or dation en paiement can only be made between husband and wife in the three cases specified in the art. 2421, Civil Code. The heirs or creditors having always their rights protected. And in the suit now before the court it does not appear, that any of said causes existed at the time the sale was made.

5. Fraud is fully proven by the evidence on record, and nothing has been offered by Montilly to show that he acted in good faith.

6. The court did not err in admitting evidence to establish that Montilly made profits, and to establish the probable profits and losses made by him.

7. A party accused with fraud is bound to show the correctness of his acts. The acknowledgment of the husband in a contract of marriage of the receipt of monies, does not make proof against creditors. Proof conclusive must be adduced.

8. Judgment of separation of property between husband and wife is null and void, if not executed within fifteen days after judgment obtained. The laws of France are similar in that respect to ours.

*Soulé & Bodin,* for the appellant.

1. By the law of 1817, nothing justifies the judgment rendered by the court on the verdict returned by the jury.

2. The law of 1840, applies only to cases where unlike the present, the insolvent has not made a voluntary surrender of property.

3. The 10th section of the act of 1840, as well as the 22d of the act of 1817, consider facts of the nature of those alleged in the present case as presumptive evidence of fraud; the intention of the parties to the act alleged, as being fraudulent. must be inquired into ; there is, there can be no fraud unless the *malus animus* and *the eventus damni* be proved. In this case the titles of Mme. De Montilly, although, perhaps subject to exception if presented to support her title,. could not be separated from the act of sale executed by her husband in her favor, they were necessarily *pars rei gestie,* the best evidence whereby the intention of the parties could be ascertained.

4. The insolvent, by the law of 1840, was entitled to the alternative either of submitting to the punishment inflicted upon him, or to exonerate himself thereof by paying the complaining creditor, and this alternative is denied him by the judgment *à qua.*

*Simon, J.* delivered the opinion of the court.

This is an appeal from a judgment rendered on the verdict of a jury declaring the petitioner guilty of fraud towards his creditors, in consequence of which, he was deprived of the benefit of the laws made for the relief of insolvent debtors, and condemned to be imprisoned for the lapse of one year.

On the 21st of December, 1840, the petitioner sued his creditors, and annexed to his petition a schedule of his affairs, the passive side of which contains the following statement:

EASTERN DIS.    S. *Mme. A. F. Montilly née Lévèque, ses droits dotaux et*
May, 1841.      *paraphernaux, ainsi qu'ils sont constatés par un acte chez*
MONTILLY        *J. Mossy, not. pub. en date du* 30 *Novembre dernier, mon-*
vs.
HIS CREDITORS.  *tant à* $7264 56, *sur laquelle somme j'ai donné en payement*
*$2737 50. Balance $4527 4. N. B.—Ce payement à Mme.*
*Montilly est fais au moyen de la vente d'un lot de terre et*
*de trois esclaves dans un moment où je ne pensais pas devoir*
*présenter un bilan sitôt.*    The cession of property was accept-
ed by the court for the benefit of the creditors, and on the
13th of January, 1841, Louis Léfèbvre, a judgment creditor,
carried on the bilan, filed his opposition, alleging several
grounds of fraud, to wit: 1. That the insolvent has not made
a true, correct and faithful statement of his affairs, has not sur-
rendered all the property he possessed, and has not produced
his books in court. 2. That on the 30th of November, 1840,
by a public act passed before Jules Mossy, the insolvent made
a sale or *dation en payement* to his wife, of a certain lot and
three slaves for the sum of $2737, in part satisfaction and on
account of certain pretended matrimonial rights, amounting al-
together to $7264 54, as specified in the notarial act; the
whole of which transaction is fraudulent and collusive, and
made with a view to defraud the insolvent's creditors; it is fur-
ther averred that the pretended rights of the wife cannot be
recognized by our laws; that if she obtained a judgment of
separation of property against her husband in France, she
must go there to exercise her rights; that the marriage contract
of the parties was not made in conformity with our laws, nor
with a view to reside in this State; that the judgment of the
French tribunal cannot operate as a mortgage on property in
Louisiana, unless duly recorded and recognized by our courts
of justice; that the judgment of separation of property is null,
because it never was executed by the real payment of the
rights of the wife by authentic act on all the property belong-
ing to the husband; that the act of sale in question was made
to defraud the opponent who was then and is now a judgment
creditor of the husband, and who therefore had acquired rights

upon his property; that the object of said sale was to give an undue preference to the insolvent's wife, and that by certain proceedings which took place after the passing of said act, the insolvent fraudulently intended to keep off the opponent's claim so as to allow his said wife to prescribe against the action which could have been instituted against her to annul the said act. The opposition concludes by praying that the insolvent be declared to be guilty of fraud and dealt with according to law; and that in the mean time he be arrested and held to bail.

The insolvent was arrested as prayed for, gave his bond with good and sufficient security as required by law; and on the 8th February, 1841, he filed his answer to the opposition, denying the charges of fraud therein contained, and alleging that he always acted as an honest man; he further pleads a reconventional demand to the amount of $5000, and prays that the opposition be dismissed, and for judgment in his favor against the opponent for the amount of his reconvention. The above mentioned judgment was rendered against the insolvent on the verdict of the jury, and after having unsuccessfully attempted to obtain a new trial, he took the present appeal.

The first ground of opposition appears to us unfounded: the allegation that the insolvent debtor did not surrender all the property he possessed, unless set up in allusion to the property by him transferred to his wife, which will become the subject of our investigation on the second ground, is not supported by any evidence; and as he was not *a merchant* or *shop keeper*, in the true sense of the law, he could not be presumed to have kept any commercial books, which would exhibit the real situation of his affairs more fully than the schedule annexed to his petition. He however produced a book, which comes up with the record, and which appears to be the only one which he ever kept; and there is no evidence showing that he had any other book, except the vague testimony of witnesses who heard him speak of his books *in the plural*, without specifying what they were; but this, in our

EASTERN DIS. opinion, would not be sufficient to support an allegation of
May, 1841. fraud, even if he had been bound to produce them.

MONTILLY          On the second ground of opposition, it is perhaps important
vs.
HIS CREDITORS. to remark that the insolvent's wife was not made a party to
the suit, and that therefore the opponent cannot avail himself
of the provision contained in 14*th section of the act of* 1840.
The charge of fraud ought consequently to be limited to its
effect against the insolvent debtor; and we must consider it as
having been set up merely for the sole object of depriving him
of the benefit of the insolvent laws, and of subjecting him to
an imprisonment not exceeding three years.

In order to constitute a fraud, two conditions are legally ne-
cessary: there must be the intention of defrauding, *consilium
fraudis,* and the event or the effective and actual loss sustained
In order to by the creditors, *eventus damni;* if one of these requisites does
constitute a
fraud, two con- not exist, there is no fraud; *Law* 15, *ff. quæ in fraud. credit.*
ditions are ne-
cessary; there *book* 42, *tit.* 8.   *Vinnius, in sec.* 6, *instit. de act., No.* 4, says,
must be the *in- Ut hæc actio competat, requiritur, ut quid alienatum sit in*
tention of de-
frauding, and *fraudem creditorum ; in fraudem autem alienatum hic accipi-*
the event or ac-
tual loss sustain- *mus, si et animum fraudandi debitur, et eventum fraus ha-*
ed by the credi-
tors, to deprive *buerit; nam si alter utrum desit, et vel propositum fraudandi*
the debtor of the *nullum fuerit, quod putaverit debitor se solvando esse, vel* CRE-
benefit of the in-
solvent laws. DITORES RE IPSA ET EVENTU FRAUDATI NON SINT, HUIC ACTIONI
NON EST LOCUS. According to the 22*d,* 23*d and* 24*th sections
of the act of* 1817, and the 10*th section of the act of* 1840, facts
of the nature of those alleged in the opposition, are considered
as presumptive evidence of fraud, subject however to be in-
quired into as to the true intention of the party against whom
the fraud is alleged. Among the grounds of fraud, which may
be set up against an insolvent debtor under the 22*d,* 23*d and*
24*th sections of the said act of* 1817, which acts of fraud are
made the subject of the 7*th section of the act of* 1840, and are
attempted to be made applicable to the present case; we find
that all persons who shall be convicted of *having concealed* any
of their property *with an intention* to keep them from their
creditors ; of having passed *sham deeds for the purpose* of con-

veying the whole or any part of their property, and *depriving* their creditors thereof; or of having *knowingly omitted* to de-clare any of their property in their schedules, *with an intent* to defraud their creditors ; or of having *alienated, mortgaged* or *pledged* any of their property *to the prejudice* of their credi-tors; or of having within three months next preceding their failure, sold, engaged or mortgaged any of their goods and effects, or of having otherwise disposed of the same, in order to give *an unjust preference* to one or more of their creditors over the others, shall be considered as fraudulent bankrupts, and debarred from the benefit of the act.

Now, in order to bring home to the debtor the facts of fraud on which the complaining creditor relies, and to give him a fair opportunity of disproving them ; and also in order to enable the court to judge of the nature and extent of the fraud alleged, and to ascertain whether the acts complained of come within the meaning and purview of the law, it is necessary that they should be clearly and distinctly specified in the written opposi-tion ; general allegations are not sufficient.

*Where the charge of fraud is made against a ceding debtor, in order that the court may judge of the nature and extent of the fraud, and to determine whether the acts complained of come within the purview of the law, they should be clearly and distinctly speci-fied in the writ-ten opposition ; general allega-tions are not suf-ficient.*

In this case, what is the principal or material issue of fraud presented by the opposition? *That the insolvent within less than a month previous to his failure, sold and transferred cer-tain property to his wife in payment of her pretended matri-monial rights.* The property remained in his possession, it was neither concealed nor put out of the reach of his creditors, and the debtor himself in laying before his creditors the state-ment of his affairs, apprized them frankly of the object of his act, so as to give them the means of inquiring into its validity, and of controverting the alleged rights of his wife, nay, it seems to us that his declaration in his bilan destroys any pre-sumption of *intentional fraud.* The very terms of the oppo-sition, which is merely predicated on points of law arising from the several acts on which the legal rights of the wife are based, and which are matters more properly to be litigated between her and the creditors, show that the controversy is not such as to be carried beyond the discussion of the contradictory rights

EASTERN DIS.
*May,* 1841.

MONTILLY
*vs.*
HIS CREDITORS.

of the parties, and that the insolvent's wife had gained nothing by the act complained of; since, from the schedule of her husband, she was still bound to establish her claims. It is not stated in the opposition that the property transferred was worth more than the price stipulated in the deed, and if it was, or if it was suspected that it had been transferred without consideration, the creditors were yet at liberty, under the disclosure made in the bilan, to compel, the insolvent's wife to prove the legitimacy of her demands against her husband.

It has been strenuously urged that the deed of sale in question was passed with a view of giving to the wife *an undue preference* over the other creditors and particularly over the opponent: What preference? Surely, it cannot be pretended that by the act complained of she acquired any right of a higher dignity than she had before, there was no use in giving her any preference, as, supposing her claims to be really due, she was, as a married woman, entitled to be preferred to all the creditors named in the bilan, and her legal or tacit mortgage was for her a sufficient guarantee that, in case of her being able to prove the amount of her said claims, she would, by preference, obtain the full satisfaction of the sums due her by the insolvent, and exhaust the whole estate.

So where the allegations are mere matters of legal right, subject to be disputed and controverted in the *concurso,* they do not amount to a *fraud* against creditors within the meaning of the 22d, 23d and 24th sections of the act of 1817, and 10th section of the act of 1840, relating to insolvent debtors.

On the whole we are unable to perceive in the opposition any substantial fact of fraud, which, under our insolvent laws, were to be submitted to a jury; the allegations therein contained are mere matters of legal rights subject to be disputed and controverted in the *concurso;* in our opinion they do not come within the meaning and object of the above quoted sections of the laws of 1817 and 1840; and from the circumstances disclosed by the record, we are at a loss to conceive how the jury could find the insolvent guilty of fraud. The intention to defraud, *consilium fraudis,* far from growing out of the acts of the debtor, is at least very doubtful; and there has been no actual loss, *eventus damni,* experienced by the creditors who have yet the same right of objecting to the pretended claims of the insolvent's wife, in the same manner and with as

much advantage as if no deed of sale of the property had ever been passed.

This view of the case makes it unnecessary to examine the bill of exceptions taken to the rejection of the papers and documents produced by the insolvent; but we cannot forbear noticing that the record shows that on the 6th of February, on a motion made by the opponent's counsel, the insolvent's wife was ordered to produce in court on the day fixed for the trial of the cause, (9th of February,) the very same papers, which, when offered by the appellant as being a part of the act complained of, were rejected by the court. The opponent who, in his opposition, had alluded specially to the said acts in support of his allegations of fraud, was certainly bound by the documents which he had called for, and his objection to their production ought perhaps to have been overruled.

We do not think that this is such a case as ought to be remanded for a new trial on the allegations of fraud.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed; and proceeding to give such judgment as, in our opinion, ought to have been rendered below; it is ordered and decreed that the appellant be discharged from the opposition made to his being entitled to the benefit of the laws passed for the relief of insolvent debtors; that the appellee's opposition be dismissed, and that this case be remanded for further proceedings in the *concurso* according to law, the said appellee paying the costs of his opposition and of this appeal.