CORA ANN SLOCOMB and others *v.* THE REAL ESTATE BANK OF
ARKANSAS.

Payment of the price is not essential to the contract of sale. Proof of circumstances
calculated to create doubt as to the fairness of the transaction, will not be sufficient
to set aside a sale.

Two things are necessary to constitute fraud : the intention to defraud, and actual
loss or damage, or such strong probability of it as will induce a court to interfere.

Plaintiff attached certain cotton as the property of defendants. Proof that it had
been previously sold by defendants to intervenor, who had given a note for the price,
which was protested at maturity, and still unpaid. The sheriff's return showed that
he had "attached seventy bales of cotton, which was subsequently released on
the execution of a bond by the consignees." Urged on behalf of plaintiffs, that
though the attachment could not hold the cotton, it was good as to defendants' pri-
vilege as vendors. *Held*, that the return showed that no such right had been at-
tached ; and that the lien, if any existed, attached to the cotton, which had been sold.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

GARLAND, J. The plaintiffs, holders of a number of the notes
of the defendants, amounting to $3250, presented them for pay-
ment in specie at Little Rock, in the state of Arkansas, which
being refused, they attached seventy-four bales of cotton in the
hands of Frierson, Dale & Co., in New Orleans. The defendants
answer that the property seized does not belong to them, but to
the intervening party who claims it. That they have never been
cited, nor are they in court by the seizure of any property of
theirs ; and further, they plead a general denial.

John Preston of Arkansas intervened in the suit, and claimed
the cotton as his property. To this petition the plaintiffs file a
general denial only, and pray that his demand be rejected, and
that the cotton be adjudged to be liable for their debt and costs.

The evidence shows that the cotton was purchased of different
planters, in the neighborhood of Helena, where there is a branch
of the Bank, by the officer of the branch; and that it was after-
wards sold by the President, by order of the Directors, to the in-
tervenor, who gave his note for the price, which appears to have
been a full one, payable in sixty days. The cotton was delivered
ed to Preston by the Cashier, who put the letter P on it as his
mark ; and it was shipped by the purchaser, and a bill of lading
taken in his own name.

On the part of the plaintiff, it is proved that Preston is a stockholder in the Bank; that he was formerly its attorney, and is not in the habit of purchasing and shipping cotton. A witness named Payne, says that on the 23d of March, 1841, he was at Helena, and saw 40 or 50 bales of cotton in the yard of the Bank, but that none of it was marked P ; and that he employed a man to inform him when it should be shipped. From the 1st to the 20th of April, 1841, he says that he was at Little Rock, where he met with Harris, who introduced himself to him as the President of the Bank at that place, and told him that he was going to New Orleans to see about the property of the Bank that had been attached by plaintiffs, and he believes by other persons ; and that if he could not get the property released, or make some arrangements that would prevent such attachments in New Orleans, he would be compelled to ship property, and send funds to that city in the name of other persons.

There was a judgment in favor of the plaintiffs for the amount of their debt, and against the intervenor on his claim to the cotton, from which he alone has appealed.

The pleadings in this case present simply the question of title to the cotton. There is no allegation of fraud or simulation in the sale, although the counsel for the plaintiffs has in argument endeavored to establish both. The evidence shows conclusively that there was a sale and delivery of the cotton to Preston, the intervenor, and that it was shipped to the garnishees as his property ; and though Preston does not appear to have yet paid the price, it is not the less a sale, since the payment of the price is not an essential requisite to that contract. The price is secured by a note, and nothing is shown to prevent its collection, at the pleasure of the holder. From the time that the cotton was delivered to him on the bank of the river, and the putting of the initial letter of his name on the bales, it was at his risk ; and had it been lost or destroyed, the loss would have been his, so far as the record presents the case. The fact of Preston being a stockholder in the Bank, and formerly its attorney, and of his not being in the habit of purchasing, may create a doubt on some minds as to the fairness of the transaction ; but that is not a sufficient ground to set aside a sale, as this court has often decided.

The evidence of Payne is in itself so uncertain, and so contradicted by other facts, as to weigh very little on our minds. He was at Helena on the 23d of March, 1841, and saw 40 or 50 bales of cotton in the yard, with a mark altogether different from that on the cotton in controversy. The man he employed does not appear ever to have given him information of the shipment of that cotton. The 74 bales claimed by the intervenor, was shipped on the 3d and 4th of May. Between the 1st and 20th of April, Payne says that he had a conversation with Harris at Little Rock, who was then on his way to New Orleans to see about this case in particular, and some others as he believes, whilst the record shows that the cotton did not leave Helena until the 3d and 4th of May, and this suit was not commenced until the 13th of that month, more than a month after the pretended conversation. These facts, connected with the rather extraordinary manner in which the conversation commenced, and its purport, compel us not to rely much upon the memory of this witness. Independent of there being no allegation of fraud, it appears to us that the plaintiffs have failed to show any, although they have had the benefit of all their own testimony, and also of the depositions taken by the intervenor; nor have they shown that any injury has resulted to them. The Bank clearly had a right to sell its property in Arkansas. It is not alleged nor proved that it is insolvent, any further than its refusal to pay the bills sued on, establishes that fact; nor is it shown that if the defendants were sued at the place of their domicil, the plaintiffs could not recover their money. To constitute fraud, two things are essentially necessary: *first*, the intention to defraud; and *secondly*, actual loss or damage, or such strong probability of it as will induce a court of justice to interfere. 18 La. 388.

The counsel for the plaintiffs contends that though he may not be able to hold the cotton attached or its proceeds, yet that he has a right to the vendor's privilege, which the Bank has on it in consequence of the price not having been paid by Preston. This position seems to us more specious than sound. By reference to the return of the sheriff, it will be seen that no such right was attached;* and had it been, we do not very well see how the plain-

* The sheriff's return is in these words : "Attached in the hands of Frierson, Dale & Co., seventy bales of cotton, marked P."

tiffs could claim ·it.   The lien, if any existed, attached to the cotton which has been sold ; the money is in the hands of Preston's commission merchants, and it looks to us like grasping at the shadow after the substance has disappeared.

The judgment of the Commercial Court is, therefore, annulled and reversed, so far as it relates to the intervention of John Preston; and it is ordered that the intervention and claim of John Preston to the seventy-four bales of cotton in controversy, or the proceeds thereof, be sustained, and that the same be paid to him or his assigns, by Frierson, Dale & Co., the holders thereof ; the plaintiffs paying the costs of this appeal, and those of the intervention in the inferior court.

*Eggleston*, for the plaintiffs.

*P. Anderson*, for the appellant.