*1341 The opinion of the court was delivered by
Watkins, J.
The plaintiff is appellant from a judgment sustaining an opposition to the homologation of the proceedings and deliberation of a meeting of his creditors, appointing a definitive syndic, and to the appointment of Mose Haas to be definitive syndic.
The opposition was made by Stern, Lauer, Scholl & Oo., of Cincinnati, Ohio, and Rothschild Bros., of St. Louis, Missouri, creditors of the plaintiff, and Edward Everett, provisional syndic — the first named having an ordinary, unsecured claim for one thousand four hundred and seventy-six dollars and twenty-five cents, and the second one for five hundred and twenty-four dollars and sixteen cents.
The judgment appealed from is predicated upon the verdict of a jury finding the plaintiff “ guilty of fraud in conferring an unlawful preference and advantage upon another bona fide creditor,” and it adjudges and sentences him “ to imprisonment in the parish jail in Farmersville, Union Parish, La., for the period of nine months.”
But this decree is coupled with the proviso that the insolvent may be “ released from imprisonment by paying the complaining creditors, Stern, Lauer, Scholl & Co. and Rothschild Bros., the amount of their debts against him; or by his paying and repairing the amount of injury and fraud done to them, and which is complained of by them, which amount may be fixed by the said Jacob Marx in a proceeding to be had contradictorily with the said complaining creditors, as may be determined by this court.’’
It appears that the syndic’s appointment is not dealt with or disposed of in the foregoing decree, and need not therefore be referred to; and, aside from the various averments in reference to the manner in which proof of the insolvent’s debts was made, and the authority of the persons representing the creditors at the meeting of creditors, the allegations of opponents charging specific acts of fraud against the insolvent are few, and same are embraced in the following extract frbm the brief of his counsel which we have verified, viz.:
“ Opponents aver that Jacob Marx has been guilty of divers acts of fraud during the past three years. That he has shown unfair and undue preference to J. Weiss & Oo., A. Adler & Oo., Wm. Adler & Co., B. Landauer & Co., Horter & Rice; and has paid some of his creditors in full. That said Marx borrowed money from Weiss & Co., and pledged his individual note for same, which was the com *1342 mon pledge of Ms creditors, and placed said funds in a new business in Monroe, La., known as the Marx Company, Limited, but placed his stock in the name of his father-in-law, M. Levy, of Mississippi. That he has collected about five thousand dollars on notes and accounts that he owned when he applied for a respite, in April, 1892; that he has sold about two thousand dollars’ worth of his notes and accounts, and admits he now owns thirteen thousand dollars less than he owned two years ago, and yef has not paid his foreign creditors, whose debts aggregated nine thousand dollars, except one or two whom he preferred and paid in full in the last twelve months, to-wit: The Simon T. Gregory Company, of St. Louis, for three hundred dollars.”
Immediately succeeding this specific charge, the allegation is made that the insolvent had been guilty, during previous years, of various acts of fraud, in the preparation of his schedules, preparatory to obtaining a respite, alleging “that for all of said acts of fraud herein set forth Jacob Marx should be imprisoned according to law and a jury should be summoned to try the same.”
The prayer of opponents corresponds with their averments.
The attorneys for the insolvent attract our attention to several objections of substance apparent upon the face of the papers, and upon them they confidently rely for the reversal of the judgment and verdict of the jury.
They may be summarized as follows, viz.:
First — The prescription of twelve months prior to the cession, against the charges of fraud.
Second — That the creditors opposing the cession, on allegations of fraud, have no standing in court, because they are foreigners, not domiciled within the State of Louisiana, and who have not accepted the surrender of the insolvent under the insolvent laws of the State of Louisiana, and are, consequently, in no way bound thereby.
Third — That opponents have not alleged that the insolvent did any act with intent to defraud his creditors, or that they, as creditors of his, had been injured by the acts complained of.
Fourth — That the opposition is radically defective in not specifying the dates, character and extent of the fraudulent preferences which are complained of.
In limine, the attorneys for the insolvent tendered a plea of no cause of action, the want of jurisdiction ratione materise and the prescriptions of ten days and twelve months.
*1343 The last was, by the judge a quo, “ referred to the merits to be tried by the jury,” and the other pleas were overruled.
Upon the finding of the jury, and the rendition of judgment, the attorneys made an extended application for a new trial, which was refused.
In the first place, we think it was manifestly the duty of the judge a quo to have passed upon and decided the applicability of the plea of twelve months prescription, as a question of law, which necessarily determined the admissibility of a great deal of the evidence which has swelled the transcript to unusual proportions.
To illustrate: The opening sentence of the opposition is “that Jacob Marx has been guilty of divers acts of fraud during the past three years,” whereas the insolvent made his application for a respite on the 1st of April, 1892, and the meeting of his creditors, which is the foundation of this opposition, was not filed until the 17th of October, 1894; and the opposition itself came at a later date.
A simple inspection of the statute under which this opposition was filed shows that the prescriptible period begins to run from a date twelve months prior to the date upon which the insolvent’s surrender is made, for the language of the same is:
“ If a debtor, who has voluntarily surrendered his property to his creditors, or has been proceeded against for a surrender, shall have given within the year an unjust advantage or preference to any one or more of his creditors,” etc. Rev. Stat., Sec. 1804.
On the second proposition it appears to be evident that our insolvent laws provide a purely domestic remedy which can be availed of only by domestic creditors, or those domiciled outside of the State, provided they come into our courts and submit themselves to its jurisdiction by accepting the surrender by proving their debts at a general meeting of creditors. For it can not be serious insisted that foreign creditors who have declined, or failed to accept a debtor’s cession, may come into our courts for the sole purpose of enforcing against the insolvent the penalties of the law, while yet withholding an acceptance thereof, which might bind them in the future, by a final discharge through the votes of resident creditors.
But on the third proposition the ease is just as clearly against op - ponents; for upon a most careful analysis of the sections of the insolvent law upon which this opposition is founded, and the decisions of this court defining them, we held that the gravamen of the charge *1344 is the intention on the part of the insolvent to defraud and injury to the complainant resulting therefrom. Burdeau vs. His Creditors, 44 An. 11; Vide Campbell vs. His Creditors, 16 La. 348; Montilly vs. Creditors, 18 La. 383; Slocomb vs. Real Estate Bank, 2 Rob. 92.
The following extracts from our opinion in the principal case will suffice, viz.:
“ Whether the insolvent be guilty of fraud or not under this section is in the first place dependent on the question of fact as to the insolvent’s commission of the reprobated act, and in the second place on the fact of his having successfully rebutted the legal presumption of guilty intent raised on the proof of the act. But in order to determine the main question, the insolvent’s guilt of fraud under and in contemplation of the sections of the Revised Statutes we have quoted, we are first to ascertain whether as a matter of fact Burdeau did give within the year an unjust advantage or preference to any one or more of his creditors by payment or otherwise, the effect of which was to injure the complaining creditor.”
!}: * * * *
And upon referring to the foregoing decision, we say: “Those decisions conform strictly to the precise wording of the statute; for it declares not only that the act complained of must have conferred or have been intended to confer on some of the creditors of the insolvent an unjust preference or advantage over the creditor who charges fraud, but it also declares that the effect thereof shall be to injure him.”
Upon a consideration of all of the foregoing objections to the timeliness and sufficiency of charges and proof, we are of the opinion that the case should have been decided in favor of the insolvent.
It is therefore ordered, adjudged and decreed that the verdict of the jury and the sentence of imprisonment and judgment thereon pronounced be annulled and reversed; and it is further ordered and decreed that the insolvent be released from custody, and the demands of opponents rejected at their cost in both courts.