PUGH, Judge ad hoc.
This action was brought by Nason Guidry, the owner of Guidry’s Furniture and Glass Shop, to recover the balance allegedly due to him from the defendant, Hub City Motors, Inc., under a contract between the parties. The basis of the action is a written contract, dated July 2, 1957, signed by the plaintiff and by Mr. B. A. Fortier, the president and general manager of the defendant corporation, under which the plaintiff obligated himself “to furnish and install glass and metal to remodel” defendant’s store front according to certain stated specifications for the sum of $6,930. $6,000 of this amount was paid to the plaintiff by defendant with a check dated July 16, 1957. In his petition plaintiff prayed for recovery of $930, the difference between the amount he was paid and the amount set forth in the above-mentioned contract, plus $138.60, representing 2% sales tax allegedly due by the defendant on the contract price, or a total of $1,068.60, together with legal interest and costs. Resisting plaintiff’s demand, defendant in his *653 answer admitted that he had paid the plaintiff $6,000, but denied that anything' is now due. He alleged that he would not have entered into the contract except for the fact that he had been misled and deceived by the fraudulent actions of the plaintiff in furnishing a purported estimate from another firm, Binswanger & Co., proposing to furnish the same work and materials for $7,385, and that plaintiff knew the bid to be false and untrue. Defendant further alleges that in September of 1957, Bin-swanger & Co. furnished a second proposal for the same work and materials for $3,368. Assuming the position of plaintiff in re-convention defendant prayed for judgment in the amount of $2,632, the difference between the second Binswanger bid and the $6,000 paid to plaintiff. The trial judge rejected the defendant’s reconventional demand, finding that the defendant had not established that he had sustained an actual loss as the result of plaintiff’s conduct. After reviewing the evidence in considerable detail, the trial judge stated in his reasons for judgment that the evidence introduced would not justify a conclusion that the contract price of $6,930 was “exorbitant, or not in keeping with the work done.”
The district court awarded judgment in favor of plaintiff in the amount of $930, the difference between the amount stated in the contract and the amount already paid, but rejected his claim for the 2% sales tax ($138.60) allegedly due, for the contract itself made no mention of any such additional charge. The defendant has taken this appeal, and the plaintiff does not renew his sales tax demand in this Court, requesting merely that the judgment of the lower court be affirmed.
Defendant’s claims are postulated upon Guidry’s alleged fraud, and it is clear from the jurisprudence that in order for defendant to succed, it must establish that the contract price of $6,930 was excessive, for the defendant cannot succeed unless it was actually damaged by the alleged fraud. See Montilly v. His Creditors, 1841, 18 La. 383; Slocomb v. Real Estate Bank of Arkansas, 2 Rob. 92; Buxton v. McKendrick, 1953, 223 La. 62, 64 So.2d 844; Swain v. Lindsay, La.App.1956, 85 So.2d 360; and Orr v. Walker, La.App.1958, 104 So.2d 226. After a careful study of the record, we are convinced that there was no manifest error in the trial judge’s finding that the evidence introduced failed to establish the excessive nature of the contract price.
Defendant Hub City Motors, Inc., is the authorized Ford automobile dealer for the City of Lafayette. Prior to the devastating and disastrous attack of Hurricane Audrey on June 27, 1957, the front of the main showroom of Hub City Motors consisted principally of large plate glass panes. Mr. Fortier testified that when the force of the hurricane broke the first pane, he telephoned Mr. Domingue of the American Glass and Mirror Works, requesting emergency relief. Mr. Fortier stated that the glass panes were “popping out” and landing across the street, that glass was blowing fifty feet back into his place of business, that conditions were “very dangerous” and constituted an immediate peril which had to be removed. He testified that he was informed that Mr. Domingue was “out on other.jobs” but would come to his assistance as quickly as he could. There is conflict in the testimony relative to the circumstances under which Guidry appeared at Hub City Motors, but Mr. Fortier testified that subsequent to the time he had telephoned Mr. Domingue, and while only a portion of the glass had been blown out, Mr. Guidry appeared on the scene, with materials and- a crew of men, and offered to board up the store front. Fortier testified that he told Guidry of the prior telephone call to Domingue, and refused Guidry’s offer. According to Mr. Fortier, after other requests by Mr. Guidry, and after conditions grew “more chaotic, more dangerous,” he agreed to let Mr. Guidry board up the store front. Mr. For-tier testified that he made it clear that in authorizing him to board up the store front *654 he was not committing the corporation to award Mr. Guidry the repair job. After the store front was boarded up, Guidry, according to Fortier, made repeated solicitations for the repair work, but was told that the corporation would have to comply with the insurance requirement of three competitive bona fide bids, and Guidry proposed that in order to save time he would submit the measurement figures to other companies for their use in preparing bids. The testimony is highly contradictory as to exactly what happened, but, again according to the Fortier account, Guidry subsequently submitted his own bid and a higher and “complimentary” bid prepared by a representative of Binswanger & Co., and informed Fortier that Domingue had told him that “he couldn’t touch the job for that figure.”
It is quite clear from the testimony of Mr. Fortier himself that at the time the contract with Mr. Guidry was entered into, the defendant corporation was in great need of restoring the store front which had been devastated by the ravages of the hurricane. The showroom was in almost complete darkness, despite the lighting system, and there was no visibility whatsoever into the showroom from the outside. Mr. Voorhies, the branch manager of General Adjustment Bureau, Inc., testified that as a result of the hurricane they received an influx of 12,500 claims. Mr. Fortier testified that it was imperative to have his work done immediately. These circumstances, of course, may have influenced the contract price.
There is no contention by the defendants that the work performed by Guidry was unsatisfactory. The contract was apparently prepared in the office of Hub City Motors by their secretary, and characterizes the job as a remodelling undertaking. Although there is some question as to whether this is the proper characterization, it is quite clear that the work to be done was extensive in nature, and altered the design and construction of the store front.
In an effort to establish that the contract price agreed upon was excessive, defendant offered considerable evidence. The trial judge, however, was unconvinced, stressing that the bids and estimates offered by the defendant did not embrace all the work done by Guidry, and laying emphasis on the testimony given by Mr. Lawrence Bowers of Bowers Glass Co., a defense witness. Mr. Bowers testified that about a week after completion of the job he submitted a bid to a representative of the insurance company for $2,560, minus a 20% discount allowed to insurance companies and lumber yards, or $2,048. He made it plain, however, that this included only the replacement of the plate glass. When asked how much additional charge there would have been for the aluminum stripping and moldings, Mr. Bowers stated that “offhand, I would say about $3,500.” When shown the Guidry contract and asked whether the charge was in keeping with the work done, taking all things into consideration, the witness observed that it included quite a bit more than figured in his original estimate, but stated that he was unable to give an opinion as to whether or not it was reasonable. It is to be noted that the contract itself makes no mention of the boarding up of the showroom accomplished during the hurricane.
The second Binswanger bid of $3,368, which has already been referred to, and which is relied upon so heavily by defendant in his pleadings, clearly does not establish that the Guidry bid is excessive. The price quoted in this second Binswanger proposal is relative to furnishing and installing the glass, metal sashes, and division bars to replace the storm damage. It does not embrace much of the work performed by Guidry, and specifically provides that “any repair work or work of any description including any materials that may be required to prepare these openings to receive this glass and metal is to be done and furnished by others.” No mention is made in this document relative to the cost of boarding up the building to prevent further *655 storm damage. Mr. Bates, the person who prepared this bid, did not testify in person, but stated in deposition that he had not personally inspected the storm damage, that the estimate was based on information furnished him by a representative of General Adjustment Bureau, Inc., that the bid did not include any structural changes in the frame to receive the glass, or any remodel-ling of the glass front of the premises.
There is also in the record an estimate dated February 3, 1959 (about eighteen months after the work was performed by Guidry), signed by Mr. L. A. Zimmer, the manager of the Lafayette office of Pittsburgh Plate Glass Company. Mr. Zimmer was not called as a witness nor was his testimony introduced by deposition, and his. estimate of $3,650 for the furnishing and installation of certain materials does not embrace all of the services performed by Guidry.
The $3,842.20 plus 2% sales tax estimate prepared by Mr. Domingue, the owner of American Glass and Mirror Works in February 1959 (about a week before the trial in the lower court) to install a front “exactly like the existing front of Hub City Motors Inc.,” is not sufficiently persuasive to cause us to find that the trial judge’s conclusion was manifestly erroneous. It is by no means clear, either from Domingue’s written estimate or his oral testimony, that his estimate encompasses all of the work performed by Guidry. It is especially noteworthy that neither Domin-gue nor the other gentlemen experienced in this field testified that they or others would have undertaken the services performed by Guidry at the time that he did for a lower price. The fact of the wide devastation caused by the hurricane and the desire of Hub City Motors for the immediate restoration of its showroom must not be ignored. We will not disturb the trial court’s conclusion that it had not been shown that the contract price was excessive.
For the reasons assigned, the judgment appealed from is affirmed, appellant to pay the costs of this appeal.