Moniotte vs. Lieux et als.

---

### No. 10,306.

### NICHOLAS MONIOTTE VS. F. O. LIEUX ET ALS.

Where property is purchased during the existence of the community, and after the dissolution of the community the title is perfected by the survivor paying the purchase price, the property belongs to the community, and the purchase price so paid is a community debt.

A mortgage debt resting on property acquired during the community, and discharged by the succession after the dissolution of the community, is a community debt. Interest, after the dissolution of the community, must be paid by the usufructuary.

Where a part of the record in a suit which was compromised is offered to prove the judicial admission of one of the parties to the suit, it is competent for the other party to offer the compromise in evidence to show the final disposition of the suit and the matters settled by the compromise and which were at issue in the litigation.

APPEAL from the Fifteenth District Court, Parish of Pointe Coupée. *Semple,* J.

*O. O. Provosty* and *Thomas H. Hewes* for Plaintiff and Appellant.

---

*L. B. Claiborne* for Defendants and Appellees.

---

The opinion of the Court was delivered by

McENERY, J. Constance Collins, the wife of Paulin Deplaigne, died in 1867. There were left, as issue of her marriage, four children. One of them, Marguerite, soon after her mother's death, married the plaintiff in this suit. Mrs. Nicholas Moniotte died in 1869, leaving issue of her marriage with Nicholas Moniotte, an infant daughter, Mélicie, who died in 1883. The plaintiff, inheriting from this child, brought suit for her interest in her grandmother's succsesion.

Constance Collins' succession, at her death, on the application of her husband, Paulin Deplaigne, was regularly opened, and in January, 1868, an inventory of her succession was made.

The two tracts of land comprising the Grand Bay Plantation were included in the inventory as community property, and appraised at $8400. The personal effects in the inventory do not figure in this suit, as by admissions in the inventory they are shown to be no longer in existence, the mules having long since died, and the other movable effects are worn out or are valueless. There was in the inventory an item of $6000 cash.

Paulin Deplaigne died in 1887, and the Grand Bay Plantation was inventoried in his succession as his separate property.

The defendants, the heirs of Constance Collins and Paulin Deplaigne, plead a general denial, and also F. O. Lieux, the administrator of the succession of P. Deplaigne.

Defendants waive the exceptions they have filed, and the plaintiff practically abandons his demand for the annulment of the sale under an order of court, of the Grand Bay Plantation, to F. O. Lieux, the administrator. The questions to consider are whether the Grand Bay Plantation belonged to the community, the amount of the community after deducting debts, and whether there is any sum of money due the plaintiff from the succession of Constance Collins.

The Bay Plantation was acquired by Deplaigne during the existence of the community, from A. L. Mahondeau, on the 5th November, 1865.

The property, when acquired, was mortgaged to the Police Jury of Pointe Coupée Parish for $3900, with interest, from first day of April, 1860. A. L. Mahondeau died in 1882. Marguerite Villey, his universal legatee and testamentary executrix, brought suit against Deplaigne to

recover and bring back into the succession of Mahondeau the Grand
Bay Plantation, on the ground that the sale to Deplaigne was not real,
but simulated. A counter letter was given to Mahondeau by Deplaigne,
which recited that the sale was simulated, and the plantation remained
the property of Mahondeau, and that the four notes given, as stated in
the act of sale, should remain deposited in the hands of a third party.
Deplaigne, in his answer and defense to the suit, and his heirs, the de-
fendants herein, and the plaintiff, as tutor of his daughter, Mélicie, in
their intervention, maintained the verity and reality of the sale. The
suit did not proceed to a final judgment, but was compromised by Mar-
guerite Villey making a sale of said plantation to Deplaigne for the sum
of $15,000, the price stipulated in the first alleged sale, and surrender-
ing to Deplaigne the notes given for the purchase price.

The plaintiff offered in evidence the judicial admissions of Deplaigne
and the defendants herein to prove that the property was acquired dur-
ing the existence of the community. The defendants offered the counter
letter and the act of compromise or sale, which was objected to by plaintiff
on the ground that the judicial admissions of the defendants could not be
contradicted. The objection was sustained. The evidence should have
been admitted. The plaintiff had offered a part of the record in the
suit, and it was competent for the defendant to show its final disposi-
tion. If a judgment had been rendered, there can be no doubt of its
admissibility as evidence to show what had been determined in the case.
The compromise as between the parties, including the plaintiff in this
suit, had as between them the force and effect of a judgment, and it is
admissible to show the fact which was at issue in that suit, the status of
the property in controversy.

Deplaigne had the Bay Plantation inventoried as community property
in the succession of his wife, during the lifetime of A. L. Mahondeau.
He maintained the verity of the sale; his heirs declared the same thing,
and the plaintiff, as tutor of his daughter, from whom he inherits, also
declared the same fact, in the suit of Mahondeau, Ex., vs. Deplaigne.

Mahondeau never claimed any interest in said property, demanded
the rents or revenues, or in any way interested himself in it, after De-
plaigne took possession of it. Deplaigne, in his answer to the above
suit, explained the circumstances of his acquiring the property. He
states that for certain reasons explained by him, after the sale, it
was agreed with Mahondeau that the property should be his. It is sig-
nificant that the price paid for the property by the compromise was the
same as in the simulated sale, and the notes were returned to Deplaigne.

We are inclined to place the interpretation upon the transaction that

the parties have themselves placed upon it: that the property was purchased by Deplaigne during the community, and that he had agreed to pay $15,000 for it on the return of his notes given for the price.

The compromise will bear no other interpretation, and it is immaterial whether the understanding was had at the time or subsequently, during the existence of the community. A simulated sale can be made a real one by agreement. The price paid for the plantation, $15,000, was a debt contracted during the community.

The title to the property was perfected by paying the price of the sale, and it became community property and the price a community debt.

The work animals and other movable property on the Bay Plantation at the time of the death of Deplaigne, form no part of the community which existed between Deplaigne and wife.

All of the animals belonging to the community, from long service and natural causes, died during the life of Deplaigne, and the other movable property in the inventory of the succession of Constance Collins have been worn out by ordinary wear incident upon their use.

Neither Deplaigne, or his legal representative, are bound to replace the property.

Suit was brought against Mahondeau as principal and agent, Deplaigne and others, to enforce the mortgage on the Bay Plantation in favor of the Police Jury of Pointe Coupée.

Judgment was rendered against them.

Deplaigne paid this mortgage debt, principal and interest, and it enured to the benefit of the community, by relieving the property of a mortgage which rested on it when it was acquired by the community, and it must bear this charge, as well as the price of $15,000, for the perfection of the title to the Bay Plantation.

When Deplaigne died the value of the crop on the Bay Plantation was valued on his inventory at $7000. This must be returned as community property with the plantation.

The assets of the community will then exist as follows:

Cash ................................................... $ 6,000 00
Value of Bay Plantation at the death of Deplaigne .......... 24,000 00
Crop on same ....................................... 7,000 00

$37,000 00

From this amount deduct out of community debts: Fifteen thousand dollars ($15,000), the price of the Bay Plantation, and nine thousand eight hundred and sixty-four dollars and twenty cents ($9864 20), the

mortgage debt on said plantation paid by Deplaigne, and the balance, twelve thousand one hundred and thirty-five dollars and eighty cents ($12,135 80), represents the amount in the succession of Constance Collins to be distributed.

The share of the minor, Mélicie, to which plaintiff is entitled, is one-eighth of said amount — one thousand five hundred and sixteen dollars and ninety-seven cents ($1516 97).

There are claims and counter claims set up between plaintiff and Deplaigne which it is not necessary to notice, as they are irrelevant, as this suit can only determine the interest of the deceased minor in the succession of her grandmother, to which interest her father has succeeded.

The claims for the support, maintenance, education, etc., of the minor, Mélicie, cannot be allowed as a credit to the amount due her in the succession of her grandmother. Deplaigne, the grandfather, either took the minor to support and educate at his own expense, or to expend for this purpose money out of her revenues, with consent of the tutor. The record shows she had no revenue from her property, and the grandfather could not do what the law forbids the tutor from doing: expend and exhaust the capital of the minors.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended so as to increase the amount allowed plaintiff to one thousand five hundred and sixteen dollars and ninety-seven cents ($1597 16), and as thus amended it be affirmed, defendants to pay costs of appeal.

### On Application for Rehearing.

There is only one point necessary to consider on the application for a rehearing. It will be unnecessary to reopen the case to correct the error. In the decree interest was allowed on the mortgage debt due the Police Jury, after the dissolution of the community. The principal and interest of said debt to the time of the death of Constance Collins only should have been charged to the community.

The principal interest at the dissolution of the community amounted to $6000.

It is ordered that the decree heretofore rendered be amended so as to place said mortgage debt as a community debt for said amount, making the amount to be distributed in the succession of Constance Collins $8271 60, one-fourth of which is the share of the minor, Mélicie.

In other respects the decree remains undisturbed. Suc. Fitzwilliams, 3 Ann. 487.