BREAUX, C. J.
Plaintiffs brought this •suit against defendants for a judgment annulling and setting aside a sale, made by one of the defendants to his brother-in-law, Robert Yignes, the other defendant.
The sale attacked is dated the 5th day of October, 1905. The consideration was $8,000, payable in eight annual installments of $1,000 each, secured by mortgage and vendor’s privilege.
Plaintiffs, as commission merchants, advanced to Ryan, the defendant, the sum of $6,773.38 on Ryan’s crop of cotton in. 1905. In addition to the crop the defendant pledged notes and stock to plaintiffs to secure them.
Defendant Ryan failed in his cotton crop. The other securities furnished by Ryan to plaintiffs were sold by plaintiffs for account of defendant Ryan, and plaintiffs, on these pledged notes and stock, collected about one-sixth of their claim.
They obtained a judgment for the balance due. After they had obtained judgment, as just mentioned, they brought suit to set aside the sale from Ryan to Yignes as fraudulent and simulated, and made for the purpose of evading the pursuit of his creditors.
Ryan and Yignes denied the collusion charged.
The case was tried before a jury. The verdict was in favor of defendants.
Plaintiff urged that Ryan was insolvent; that he failed to testify in the case ; that the unsupported testimony of Vignes, the buyer, that he had not entered into a fraudulent collusion with Ryan, his vendor, should not be considered, as he was on terms of intimacy with his vendor and knew all about his business, as he had been in his employ before the sale complained of; that Yignes knew that his vendor, Ryan, had recently disposed of his live stock and of the goods in his store.
We think that the evidence shows that if the price was real it was adequate.
The position is taken by plaintiffs that the buyer Vignes was not in a position financially to buy the property.
It is true that he was not very successful as a cotton-planter; for it appears that in the year 1905 he produced only one bale of cotton on 45 acres of land. Not a very good showing taken of itself of ability to buy anything. But he informs us as a witness that he owned lands worth at least $4,000, which he had bought on credit,, and for which he paid, and had other means from which he expected to pay every cent he owed on his notes, as the buyer of the land in question. He has sworn positively in regard to the bona fides of his purchase and has made a fairly good showing of his intention to pay. He also stated that he had gone into possession of the land he bought. That he was renting it out to tenants.
The transaction, we must say, does not *609 highly recommend itself, particularly as relates to Ryan. It was not a first-class business transaction. It has in some respects on the part of the vendor the appearance at least of saving as much as possible from the debacle, after an unfavorable year in cotton planting.
The vendee Yignes stoutly denied all intention of committing a wrong, and this denial is not met by contradiction. He insists that he knew nothing of the insolvency of his vendor and nothing of his indebtedness to plaintiffs. Here again he is not contradicted.
If this be true, the case falls within the principle that where property has been sold for a fair consideration, in order to set aside the sale, it must appear that the vendor was insolvent to the knowledge of the purchaser, and that the intent of the latter in buying was to assist the former in defrauding his creditors. Rownd v. Davidson, 113 La. 1047, 37 South. 965; Bastian v. Christesen, 34 La. Ann. 883.
This sale would not have the appearance it has, were it not that the notes executed by Yignes, the buyer, to Ryan, the vendor, representing the purchase price, were transferred to Amadee Bourgeois, who appears in this suit as a third person without notice, and who testified that he became the transferee of these notes in due course of business ; that he knew nothing of the condition of his vendor’s business, nothing of his insolvency, nor of his indebtedness; that he transacted in good faith with the owner of the notes, secured, as before mentioned, by mortgage and vendor’s privilege.
This testimony was admitted without objection, and has not been contradicted by testimony nor impeached by circumstances.' He (Bourgeois) sometimes bought notes, and in that way invested money.„ The discount he-allowed (10 per cent.) was not entirely unreasonable, and he swore most positively that he paid the amount to Ryan, the holder and transferror of the notes.
If this was a device to despoil a creditor of the means of making good his claim it was remarkably well carried out. The unfortunate creditor has not succeeded in showing in what respect the facts were not as sworn to by this holder of the notes. If we are to take his (Bourgeois’) account of the purchase, he bought the notes in good faith. From this point of View there was full consideration for the sale, and it cannot now be annulled without causing this third person, if he swore truly, to lose a considerable amount honestly paid by him.
The jury knew this witness. They must have believed him. They were of his vicinage. They, it is fair to presume, knew something of his character.
We do not think we should set aside their verdict.
The transfer of these notes relates back to the sale.
Where notes secured by mortgage and vendor’s privilege are placed in circulation, and there is nothing to place the transferee on his guard, or to warn him, it is usual to treat the transaction, in so far as he is concerned, as serious and binding, both as relates to the notes and the mortgages securing them.
Notes are instruments of commerce; also the mortgage security, to some extent at least, with which they were identified as to their payment.
The sale of property may assume a reality as relates to third persons, which may result in a disappointment to 'the creditor. It is one of the chances which a business man sometimes has to take, and from which loss is incurred.
Even if originally it was not a serious sale, if it appears that the sale was made real by agreement subsequently, it is binding as *611 to third persons. Moniotte v. Lieux, 41 La. Ann. 528, 6 South. 817.
Our study of this case has not resulted in our arriving at the conclusion that the sale should be annulled.
For reasons stated, the verdict and judgment are affirmed.