SOMMERVILLE, J.
The plaintiff firm, alleging itself to be a judgment creditor of the defendant Thomas J. Majors, asks that a certain transfer of stock made by him to J. A. Majors be set aside as fraudulent, a mere simulation, without consideration, and for the purpose and with the intention of defeating the rights of the petitioner; that said J. A. Majors holds said stock for account of Thomas J. Majors, the real owner thereof; that petitioner was the creditor of Thomas J. Majors at the time of, and prior *767 to, said transfer; and that it became aware of said transfer in February, 1911. Plaintiff asks that an injunction issue addressed to J. A. Majors enjoining and restraining him from disposing of the stock referred to; that the Hibernia Bank & Trust Company, which issued the certificate of stock, be enjoined from transferring said stock in the name of J. A. Majors; and that said transfer by T. J. Majors to J. A. Majors be avoided in so far as petitioner is concerned.
Defendant excepted to the petition on the ground (1) that the petition contained no cause of action, and (2) that in the original suit between plaintiff and T. J. Majors a fieri facias had issued, under which garnishment proceedings were taken out against defendants J. A. Majors and J. A. Majors & Co., wherein the interrogatories served on them attempted to show that they had in their possession, or under their control, property belonging to the judgment debtor, T. J. Majors; that said interrogatories were answered, showing that they, garnishees, had no property belonging to T. J. Majors, and that they were not indebted unto him in any manner;' that pending the above proceedings, and while a motion to traverse the said answers of defendants was pending, the said plaintiff filed this present suit, and that after service in this suit had been made upon defendant J. A. Majors, and the same was fixed for trial, said garnishment proceedings were voluntarily discontinued by the plaintiff ; that said discontinuance, while the said answers of the said garnishees were on file, and while the said motion to traverse the answers was on file, admitted the truth of said answers of said garnishees, J. A. Majors and J. A. Majors & Co., accepting them as true; that the present suit is, in its essence, an effort to traverse the answers to the said interrogatories by said garnishees in said prior suit, and is in violation of law; that the voluntary discontinuance of their motion to traverse the said answers to said-interrogatories had worked an abandonment of their claim against the said garnishee, J. A. Majors, who is a defendant herein.
The defendant Thomas J. Majors answered, denying the several allegations contained in plaintiff’s petition.
On the trial of the exception of J. A. Majors it was ordered:
“That the document filed, termed an exception of no cause of action, in which counsel says is contained another exception, which the court does not know how to name, be considered as an answer, with leave of counsel to amend.”
Thereafter plaintiff filed, with leave of the court, an amended and supplemental petition, reiterating all the allegations contained in its original petition, and making the necessary allegations to sustain a revocatory action; in addition, it asked, to the prayer in the original petition, that the transfer of the stock referred to by T. J. Majors to J. A. Majors be set aside, avoided, and annulled in so far as petitioner was concerned, and that said property be decreed to be subject to execution under the judgment in the original suit between plaintiff and T. J. Majors, and that J. A. Majors be compelled to surrender the certificate of stock representing some 158 shares of stock in the Hibernia Bank & Trust Company, in order that the same may be sold to satisfy the judgment against T. J. Majors.
J. A. Majors answered, denyihg the allegations contained in plaintiff’s original petition, after reserving its protest against the ruling of the court on the exception theretofore filed by him.
T. J. Majors excepted to the supplemental petition’ of plaintiff, saying that the plaintiff was without the right to file, and the court was without legal authority to sign the order permitting the filing of said amended and supplemental petition; that, if said supplemental petition discloses or alleges a legal cause of action, it is inconsistent with *769 and different from that attempted to be set forth in plaintiff’s original petition, thereby making this cause a new suit, and altering the substance of plaintiff’s original demand; that no cause of action had been theretofore set forth by plaintiff in its original petition; that, if said supplemental petition sets forth a legal cause of action, the filing thereof, against which exceptor most respectfully protests, is unauthorized; and that it is an unwarranted attempt to inject into the pleadings hitherto filed by plaintiff herein a legal cause of action where none was hitherto set forth or alleged.
And, in the event that said exception, as pleaded, be overruled, defendant reserved the benefit of the same, and answered, denying all the allegations in plaintiff’s several petitions.
J. A. Majors filed a similar exception and protest.
Plaintiff filed a second amended and supplemental petition, stating that the certificate of stock referred to had been pledged by T. J. Majors to the German-American National Bank to secure his note of $57,-090.64; that said T. J. Majors substituted J. A. Majors in his place, who gave his note for $57,090.64; that a new'certificate of stock in the name of J. A. Majors was issued by the Hibernia Bank & Trust Company, which certificate was used as collateral for the said note of said J. A. Majors with the German-American National Bank — and it asks that said German-American National Bank be enjoined from disposing of said certificate of stock.
This injunction was dissolved and set aside, and a writ of injunction issued enjoining and restraining the bank, until the further orders of the court, from parting with or disposing of the proceeds which it may realize from the sale of said 158 shares of stock of the Hibernia Bank & Trust Company which may remain after the payment of the obligation of the pledgor of said stock under the law and the contract of pledge, the said balance of the proceeds of the stock to remain in the hands of said bank, subject to the further orders of the court.
There was judgment in favor of plaintiff, and against the defendants, declaring the transfer of stock referred to to be simulated, null, and void, and that the certificate of the shares of stock referred to was subject to execution under the judgment rendered against T. J. Majors. Defendants have appealed.
In support of their contention that the trial court was without authority to allow or permit plaintiff to file an amended and supplemental petition after an exception of no cause of action had been filed, reference is made to several decisions of this court, wherein we hold that, after an exception of no cause of action has been sustained, that plaintiff cannot file an amended and supplemental petition setting forth a cause of action; but those decisions are without application here.
The exception of no cause of action, filed by defendant J. A. Majors, was not sustained. On the contrary, it was ordered to stand as an answer for him, with leave to amend his answer.
T. J. Majors answered the original petition without excepting thereto.
Both defendants excepted to the amended and supplemental petition on the ground that, the original petition having contained no cause of action, the cause of action set forth in the supplemental petition “is inconsistent with and different from that attempted to be set forth in plaintiff’s original petition by the making of this cause a new suit and altering the substance of plaintiff’s demand, and that plaintiff cannot—
“inject into the proceedings hitherto filed herein a legal cause of action when no cause has hitherto been set forth or alleged.” ,
*771 Defendant T. J. Majors had put plaintiff’s original petition at issue, and defendant J. A. Majors had not put plaintiff’s petition at issue, when the amended and supplemental petition was filed. And the latter cannot be heard to complain of the action of the court in permitting the filing of the amended and supplemental petition.
[1,5] In the plaintiff’s original petition plaintiff alleged that the contract sued upon was simulated, and asked that it be set aside; in its amended petition it alleges that the contract is simulated, and that it is also fraudulent, as having been made in fraud of creditors, among whom was itself, and it asks that the contract be set aside. Plaintiff consolidated the action en declaration de simulation with the revocatory action, without asking for relief in the alternative. But no exception was taken thereto.
In the case of Johnson v. Mayer, 30 La. Ann. 1203, where certain transfers were attacked as being fraudulent and simulated, we say:
“When sales are attacked by a direct action, there is no reason why the party may not demand relief of them by alleging- simulation or fraud,, or both. We are not disposed to hamper the remedies of creditors who resort to direct actions by doubtful technicalities. In the class of cases now under consideration the widest latitude should be given them, for they are necessarily to a great degree uninformed as to the precise relation existing between their debtor and his coadjutors in wrongdoing — often they are compelled to strike in the dark. If the purchaser’s title is an honest one, it is better for him that the double test be applied in one instead of two suits. Little ground is there for him to complain when he is called upon by citation and petition to verify the truth and reality of his tiüe. The prayer of plaintiff’s petition is broad enough to cover our decree, whether we hold the sale to be simulated or fraudulent.”
In the case of Mackesy v. Shultz, 38 La. Ann. 385, which is similar to the one preceding, we there say:
“Under the doctrine of Johnson v. Mayer, we consider the judge was fully authorized to grant the relief' on the ground of either ‘simulation or fraud, or both.’ * * *
“If the object of the law be not to screen but to uncover fraud, these utterances (referring to the decision in Johnson v. Mayer) are in full consonance with its spirit, and, as they commend themselves to our sense of justice as well as to our reason, we adopt and reiterate them.”
The original petition in this case is undoubtedly lacking in allegations which are customarily employed in actions such as the one before us. It did not contain all the necessary allegations to support the charge of simulation therein alleged. But, inasmuch as we have held that the same petition might contain allegations of fraud and simulation, and plaintiff’s amended petition contains the necessary allegations for both of these actions, we are not disposed to dismiss plaintiff’s amended and supplemental petition.
Although the actions of simulation and revocation are not the same, the substances of the demands in the two cases are so nearly the same that we cannot say the petition is altered by plaintiff filing a supplemental petition, repeating the allegations of the original petition with reference to simulation, and adding that the contract sued upon was fraudulently entered into by the parties.
[6, 7] Defendants show that at the time of the filing of this suit plaintiff had obtained judgment against the defendant T. J. Majors for the amount of the debt due it by him, and that it had caused garnishment process to issue therein under a writ of fieri facias. And they argue that the two actions, the garnishment process and this suit, could not exist at the same time, and that the subsequent discontinuance of the garnishment proceedings by plaintiff was an acknowledgment of the truthfulness of the answers therein made by the garnishee T. J. Majors, to the effect that J. A. Majors was not indebted to T. J. Majors in any sum whatever.
Counsel for defendants say that the points are new, and we think they are without merit. No good reason suggests itself to our minds why a plaintiff may not traverse the *773 answers made by a garnishee in one suit, and at the same time sue the defendant and garnishee for the annullment of a certain contract between them on the ground of simulation and fraud. Nor are we able to find support for the contention that the discontinuance by the plaintiff of the motion to traverse the answers of a garnishee is an admission of the correctness of those answers.
Plaintiff practically withdraws its allegations of simulation alleged in the original petition by pleading the revocatory action in the amended and supplemental petition, without asking for relief in the alternative.
In Harrison v. Soulabere, 52 La. Ann. 707, 27 South. 111, with reference to the cumulation of actions inconsistent with each other, we say:
“It is permissible to cumulate the revocatory action and that en declaration de simulation in the same petition, provided it be done by distinct alternative allegations; otherwise the two demands would be inconsistent, for the averments that would give to the complainant the character of the revocatory action are such as affirm the reality of the acts complained of, yet seek to avoid the same as vicious and fraudulent, while the charge of simulation carries with, it the idea of utter want of reality of the thing seemingly real.”
But defendants have not excepted on this ground. We shall not review the original petition charging simulation, or the evidence in support of same.
The evidence shows that T. J. Majors was indebted to the German-American National Bank in the sum of $57,090.64, evidenced by his promissory note, secured by a pledge of the 158 shares of the stock of the Hibernia Bank & Trust Company, now held by J. A. Majors; that T. J. Majors transferred said stock to J. A. Majors, who substituted his note for $57,090.64 for that of T. J. Majors; and that J. A. Majors is now the debtor, and has been since the time of the transfer, November 12, 1909, to the German-American National Bank on said note. And the stock is pledged to secure the note of J. A. Majors.
Plaintiff asks that the transfer of said stock by T. J. Majors to J. A. Majors, one of its creditors, be set aside as having been made in fraud of its rights as a creditor.
Defendants plead the prescription of one year under article 1987, C. C., to begin to run from the date of the contract, while plaintiff contends that article 1994 has application, and prescription begins to run from the date of its jhdgment against its debtor.
Simulation was not shown; but it is clear that the sale of the stock to J. A. Majors was in fraud of the other creditors of T. J. Majors.
[8] The settled jurisprudence is that, where the alleged sale is a mere simulation, it may be disregarded, treated as a nullity by the creditor of the seller, and he may seize the property under execution, or attach it for the debt of the seller. But where there is a real sale, however fraudulent, the creditor cannot seize the property in the possession of the purchaser, but must resort to the revocatory action. The numerous cases in the reports establishing this doctrine proceed upon the plain propositions that a mere simulation is a nullity, and does not transfer the property, while a real sale, perfected by delivery, although voidable for fraud, divests the title of the seller, and vests the ownership and possession in the purchaser.
[2] A simulation which is not fraudulent because it is not prejudicial to the rights of creditors cannot be attacked by them. Theré is a manifest distinction between a fraudulent simulation, that is, a pretended contract which is in fraud of the rights of creditors, and a fraudulent sale, which is a real contract. The fraudulent simulation, a mere pretense, without reality, need not be attacked by suit; the sale, a reality though fraudulent, must be set aside by judgment, in an action brought for that purpose. See St. Avid v. Weimprender, 9 Mart. (O. S.) 649; Richards v. Nolan, 3 Mart, (N. S.) 336; Bar *775 barin. v. Saucier, 5 Mart. (N. S.) 361; Peet v. Morgan, 6 Mart. (N. S.) 139; Morton y. Crosby, 14 La. 426; Cammack v. Watson, 1 La. Ann. 132; Emswiler v. Burham, 6 La. Ann. 716; Bevens v. Weill, 30 La. Ann. 186.
[3] In Fennessy v. Gonsoulin, 11 La. 419, 424 (30 Am. Dec. 720), we say:
“So far as the object of the present suit is to avoid the judgment z-ecovered by the defendant against her husband, and the assignment of property to her, in pursuance of it, as in fraud of the plaintiff’s rights, we can regard it in no other light than as a revocatory action, by which, according to the Code, creditors may cause to be annulled any contract or transaction, so far as they may have been injured by it. Every device, contrivance, or machination by which a creditor may have been prejudiced may form the subject of this action. The assignment made to the wife of property, though made by the parish judge and experts, in conformity to the judgment, in presence and by the express consent of the parties, must be considered as essentially a contract; a datien en paiement. A contract of that description, in consideration of the dotal and paraphernal rights of the wife, is, pez'haps, authorized by the Code; but, like all other contracts, it is liable to be attacked, as in fraud of other creditors of the husband. The action is, however, prescribed by one year, to run from the date of the judgment which the attacking creditors may have obtained. Louisiana Code, art. 1989” (1994).
And with reference to the same matter of prescription, in Planters’ Bank v. Watson, 9 Rob. 267, 274, we again say:
“The prescription of one year, introduced in our law by articles 1987 (1982) and 1994 (1989) of our Civil Code, which last article is in these words: ‘The action given by this section [the revocatory action] is limited to one year; if brought by a creditor individually, to be counted frozn the time he has obtained judgment against the debtor; if brought by syndics or other representatives of the creditors collectively, to be counted from the day of their appointment’ — has its origin in the Roman law. Under that system, the revocatory action, ■called actio Pauliana, was prescribed by the lapse of one year from the time that the creditor could act, but, in general, from the day of the alienation. Pandects. B. 42, tit. 9; law 6, § 14; law 10, § 18. Toullier, vol. 6, No. 356. Duranton informs us_ (vol. 10, No. 584) that ‘l’annee ne commencait pas a courir du jour des actes ou alienations, mais seulement du jour ou les creanciers avaient pu agir, c’est-a-dire, a partir de la discussion des biens du debiteur, qui avoit suivi l’envoi possession de ces memes biens en faveur des creanciers; car anparavant l’on ne pouvait savoir s’il avait ou non dans son patrimonie de quoi satisfaire a ses obligations,’ etc. This prescription against revocatory actions has been modified by our Code, which, under the article 1987 (1982), makes it run from the day of the alienation, when its object is only to give an undue preference to one creditor over the others, and under article 1994 (1989), above recited, from the time the creditor has obtained judgment against his debtor, when the act of the latter is attacked as fraudulent, and indicates something more than a bare preference accorded to one of his creditors. [Petit v. His Creditors], 3 La. 28; [Fennessy v. Gonsoulin] 11 La. 424, 30 Am. Dec. 720; [Stein v. Gibbons] 16 La. 108. This last prescription is the one applicable to the present case.”
The rulings in Stein v. Gibbons, 16 La. 103, 108, Conte v. Cain, 33 La. Ann. 965, 969, Lehman v. Levy, 30 La. Ann. 745, 749, and Thompson v. Freeman, 34 La. Ann. 992, 994, are to the same effect. There is some dicta to be found in our decisions which would indicate that article 1987 had reference to all revocatory actions, which would exclude the general law of prescription to those actions contained in article 1994. But in some of those cases it was a matter of indifference as both terms of prescription had run, and in other cases neither term had run, or there was no discussion of the point as to which one of the two articles applied.
Article 1994 has general application to all actions given by section 7 of the Code, p. 369, while article 1987 embraces an exception. It limits the creditor’s right to proceed for the revocation of a contract between a debtor and one of his creditors for the purpose of securing a just debt, and it reads as follows:
“Ño contract made between the debtor and one of bis creditors for the purpose of securing a just debt, shall be set aside under this section, although the debtor were insolvent to the knowledge of the creditor with whom he contracted, and although the other creditors are injured thereby, if such contract were made more than one year before bringing the suit to avoid it, and if it contain no other cause of nullity than the preference given to one creditor over another.”
*777 But the contract sought to be revoked by plaintiff is not to secure a just debt. It is one not only giving a preference to one creditor over another; it is in fraud of the other creditors of T. J. Majors, even if the contract is not wholly fraudulent or simulated. Article 1994 has application in such case, and the right of a creditor to proceed is limited to one year from the date of his judgment.
Plaintiff’s debt had accrued at the time of the fraudulent contract between defendants, and the law gives it its right of action. Articles 1993, 1972.
Article 1994 is as follows:
“The action given by this section, is limited to one year; if brought by a creditor individually, to be counted from the time he has obtained judgment against the debtor; if brought by syndics or other representatives of the creditors collectively, to be counted from the day of their appointment.”
The law is quite clear that the revocatory action may not be exercised by individual creditors until their debts are liquidated by judgments, unless the defendant in such action be made party to the suit for liquidating the debt brought against the original debtor (article 1972), and—
“the action given by this section is limited to one year, if brought by a creditor individually, to be counted from the time he has obtained judgment against the debtor.”
As the plaintiff filed its suit within one year after having obtained judgment against defendant, its debtor, the plea of prescription was properly overruled.
[4] Coming, now, to consider the evidence on the merits of the case, we find: That the principal defendant, T. J. Majors, was a large speculator in cotton, and reputed to be very wealthy. That in the year 1907 he met with heavy reverses, and was reported to have lost all of his great wealth. That he represented to one of the members of plaintiff firm, at the time that he confessed judgment to it, that he had no property of any description. At that time he had the stock involved in this case, valued at eighty odd thousand dollars, which was pledged to the German-American National Bank to secure his note for $57,090.64. And that the two defendants are first cousins. That they are and have long been intimate friends and had continuous business relations, involving money transactions, although the record does not make clear the true amount thereof. That the record of these transactions was entirely within the keeping of the debtor, T. J. Majors, and only evidenced by pencil memoranda in the pocket of the debtor, which memoranda have since been destroyed. That the account book kept by J. A. Majors, covering the period during which it is claimed that T. J. Majors became indebted to him in the sum of $20,000, had been destroyed. The debtor sold his bank stock to the preferred creditor for some $4,000 less than the quoted market price, and for an uncertain amount, much less than $20,000. That, when the note of J. A. Majors was substituted for that of T. J. Majors in the German-American National Bank, the discount already paid by T. J. Majors remained uncollected for the balance of the time between the date of the new note and the maturity of the old note of T. J. Majors. And, when we consider that the note signed by J. A. Majors, now in the German-American Bank, has been regularly renewed every sixty days, and that it has not been reduced by the payment of any portion of the principal, although the stock has yielded large dividends, and he was in receipt of many thousand dollars per annum from his business, as well as having many thousand dollars on deposit with his employers, it is all so extraordinary in its nature and so suspicious in its every circumstance that we are forced to the conclusion that the transfer of the stock from the one defendant to the other was made in fraud of the other creditors of T. J. Majors.
Our laws declare the property of a debtor *779 to be the common, pledge of his creditors, and that the proceeds of its sale must be distributed among them ratably, unless there exists among the creditors some lawful causes of preference. O. O. art. 3183 (3150).
T. J. Majors being insolvent, it was his sacred duty to give effect to these principles of equity. It appears that he disposed of his whole property while the plaintiff was prosecuting to judgment its claim for the debt due it. ' This was inequitable, and a violation of an express provision of law. We believe that he did so to put himself in a position to entirely defeat the demands of plaintiff. The just principle of the Spanish law still prevails, that the debtor who sells the whole of his property to the prejudice of a creditor is presumed to do it maliciously and with the intention to defraud.
The evidence leads us to conclude that the codefendant knowingly aided in carrying these unlawful intentions of his cousin, by purchasing, knowing him to be insolvent, all of his assets, out of which plaintiff could realize its debt. It is impossible to believe that he purchased this stock merely to speculate on the misfortune of his cousin. We must exercise the discretion confided in us by the Code, and look through the apparent into the real transactions of the parties, which are covered by but a thin veil.
We could not doubt the fraudulency of the transaction, even if the parties were strangers. The presumption is greatly increased by their relationship of cousins, and their close intimacy.
We further say, in Bank v. Harris, 6 La. Ann. 811:
“These investigations, which have become deplorably common in our courts, are painful indeed ; but it is our sacred duty to search the transactions out of which they originate to the bottom, by annulling them as the only means of their prevention. Courts, mortgage offices, and paper titles must not^be used as the means of depriving them of their property, instead of securing their rights.
' “In conclusion we have to say that the real attitude of the parties seems to us to be this, that the sales were made with the intention, both on the part of the insolvent debtor and of the vendee, to place the property beyond the reach of the creditors, in order that they might thereby drive them to compromise, advantageous to the vendor, and with the understanding that the ultimate profits upon the purchases, which were, in some cases at least, clearly below the market price, should inure to the benefit of the vendor.”
It is ordered, adjudged, and decreed that the judgment appealed from be amended in part by declaring the sale of 158 shares of the capital stock of the Hibernia Bank & Trust Company of New Orleans (then and now in the possession of the German-American National Bank of New Orleans, and described in plaintiff’s petitions) by Thomas J. Majors, one of the defendants herein, to J. A. Majors, one of the defendants herein, on the 12th day of November, 1909, to be fraudulent, and that it be set aside and avoided in so far as plaintiff is concerned, as in fraud of it as a creditor of T. J. Majors, and that said property, or the proceeds thereof, in the hands of the German-American National Bank, over and above the amount due to said bank on the note of J. A. Majors, for the payment of which said certificate of stock was given as security, is the property of T. J. Majors, and subject to the claims of his said complaining creditors. And, as thus amended, said judgment be affirmed; costs of appeal to be paid by appellants.