No. 2654

Second Circuit

———

CARR ET AL. v. CROW

———

(March 12, 1929. Opinion and Decree.)

———

· Breazeale ·and Breazeale, of Natchitoches, attorneys for plaintiffs, appellants.

Nettles and Bethard, of Coushatta, attorneys for defendant, appellee.

ODOM, J. Plaintiffs have appealed from a judgment dismissing their suit on an exception of no cause of action.

As a cause of action, plaintiffs allege that defendant is due them a certain sum "for money belonging to your petitioners now in his hands and which he has acknowledged in writing in a letter addressed to the husband of Mrs. Carr as per copy annexed hereto, which he promised to pay and send petitioners through Mr. Carr a check for but which he has failed and now refuses to pay your petitioners."

Plaintiffs allege further that they leased their plantation to one Willis Allen by written contract, which is attached, and that in Article 9 of said contract the said Allen had
"made certain cross ties and which he was to pay to your petitioners the market price stumpage before the ties were shipped. That B. L. Crow (defendant) obtained by some means possession of the ties so made by Allen and while being aware as shown by his letter of September 28, 1925, that the stumpage was to be paid to your petitioners sold the ties and received therefor One Hundred Sixty Six and 69/100 Dollars ($166.69), the stumpage value of the ties at the market price which belongs to your petitioner and which he promised to send a check for but subsequently changed his mind as shown by his letter of September 28, 1925, and declined to pay the same over until he had collected a debt he alleges is due him or his firm by Willis Allen and assumes to keep your petitioners money the price of property belonging to them to pay the debt of Willis Allen to himself or to his mercantile firm." .

Article 5 of ·plaintiffs' petition reads as follows:

"Your petitioner has been informed and believes and so believing alleges that Mr. Crow now claims he did not obtain the ties from Willis Allen but bought them from another negro and paid the negro for them and for that reason he feels that he does not owe petitioners for the stumpage, One Hundred Sixty Six and 69/100 Dollars ($166.69). Petitioners show that Mr. Crow has no legal right to appropriate the money in his hands belonging to your petitioners because he bought your petitioners property from some negro, or for any other reason."

Paragraph 9 of the Lease Contract between plaintiffs and Willis Allen reads as follows:

"Lessee shall have the right to make cross ties of such suitable timber on the property and to pay lessors the market price per tie stumpage before the same are shipped."

In arriving at a conclusion as to whether plaintiffs have set out a cause of action, we must construe their petition as a whole and must also read and construe in connection therewith the letter and contract attached thereto. This we have done, and are convinced that no cause of action is expressed.

Plaintiffs allege that defendant is due them the amount claimed and that he has promised in writing to pay it, and counsel in brief says:

"The exception of no cause of action admits the allegations of the petition"; and he continues:
"If it be admitted· that he (defendant) owes and has in his hands the money belonging to petitioners irrespective of any other allegation it presents a real and just cause of action."

To say that an exception of no cause of action admits the allegations of the petition oversteps the rule. The rule is that such exception admits of the well-

pleaded facts, but not conclusions of law which the pleader draws therefrom. (See La. Digest, Vol. VI, Sec. 62, p. 31, and the numerous cases there cited.)

In the case of First Natchez Bank vs. Malarcher-Damare Co., Ltd., et al., 135 La. 295, 65 So. 270, the Court said:

"In admitting whether a petition sets forth a cause of action, the allegations which amount to mere conclusions of law are not considered as allegations of fact."

The allegation in the case at bar that defendant owes plaintiffs the amount claimed, by reason of having in his hands a certain sum which belongs to plaintiffs, is but a conclusion of law which the pleader has drawn, based upon the facts alleged. It is for the Court to determine whether, as a matter of law, the facts alleged show that defendant owes that amount, and we hold that they do not.

The main, if not the sole ground on which plaintiffs base their right to recover is that defendant has in his possession a certain sum of money belonging to them. However, taking the petition as a whole, it might be construed to mean that plaintiffs' contention is that inasmuch as defendant took over ties which were made by Allen, he, by that transaction, made himself responsible for the stumpage value of the timber out of which the ties were made.

Plaintiffs attach to their petition the document evidencing the contract by which they leased to one Willis Allen a tract of land containing about 1,000 acres, Section 9 of which provides that lessee shall have the right to make cross ties from timber on the land and to pay the lessors the market price of the stumpage before the ties are shipped. When Allen manufactured the timber into cross ties, he owed to plaintiffs the stumpage value of the timber which he obligated himself to pay previous to the removal of the timber. He owned the ties and, of course, had a right to dispose of them, and, under plaintiffs' allegations, he did dispose of them, either to the defendant or to some other person. At any rate, plaintiffs allege that defendant came into possession of the ties. If Allen, who manufactured the ties, sold them direct to defendant and, if defendant assumed the debt which Allen owed for the stumpage, he should, of course, carry out his obligation and pay plaintiffs the amount due them for the stumpage. But there is no allegation that defendant purchased the ties direct from Allen and no allegation, and in fact no intimation or suggestion, that defendant assumed Allen's debt for the stumpage of the timber. Under plaintiffs' allegations, there was no privity of contract between plaintiffs and defendant, and we are unable to understand how defendant could have come into possession of any money belonging to plaintiffs. It is not alleged, nor can we infer from the pleadings, that Allen, who manufactured the ties, paid the amount which he was due for the stumpage into the hands of defendant.

Under Section 1, Act 195 of 1912, plaintiffs had a lien and privilege on the ties for the price of the stumpage, and, under Section 4 of the Act, plaintiffs could have brought suit against Allen to collect their debt and could have enforced their lien against the ties, provided the same had not been lost, and could have sequestered the ties. But this is not a suit against Allen to collect the debt, but one against a third person alleged to have in his possession money belonging to plaintiffs.

On the other theory of the case, we think it can not be said that, if defendant purchased the ties direct from Allen, he

thereby made himself responsible for the stumpage value of the timber from which they were made. Act 195 of 1912 does not provide that the privilege for the stumpage value follows the ties into the hands of third persons. If it be contended that plaintiffs had a vendor's privilege on the ties, that privilege was lost by the transfer from Allen to defendant, because the vendor's privilege does not follow movables into the hands of a purchaser, even though the purchaser knew that the ties had not been paid for.

See Burdeau vs. His Creditors, 44 La. Ann. 11, 10 So. 395; Dreyfous vs. Cade, 138 La. 298, 70 So. 231; Pierson vs. Carmouche, 146 La. 798, 84 So. 59; Robinson vs. Tatum, 7 La. App. 335.

If it be true that the defendant sold the ties, it does not follow, under any law of which we are aware, that the proceeds became the property of these plaintiffs, and it therefore follows that he had no money in his hands belonging to him.

But it is alleged that subsequent to the date on which defendant got possession of the ties, he promised by letter to pay for the stumpage. The letter speaks for itself. It states that the writer had ascertained that Allen owed $166.69 for the timber, and continues:

"He owes $190.00 on this lot of work. I asked Mr. Byde Brown if Willis would have anything coming out of the crop that I could get to go on this debt and he told me no. He also said that per his rent contract he had the use of the timber and for me to apply what I got out of the ties on this account."

From this, we understand that defendant had advanced $190.00 to make the ties. Under the Act of the Legislature above referred to, he also had a privilege on the ties which was concurrent with that of the plaintiffs. At the suggestion of Byde Brown, defendant had applied the proceeds of the ties on his debt. Just what connection Byde Brown had with the transaction is not disclosed by the record. The letter referred to goes on to state:

"I cannot send you anything on these ties until I see whether Willis is going to have anything to pay me with out of his crop."

This is the portion of the letter which plaintiffs construe as an unconditional promise to pay the debt of Willis Allen. We do not construe it as such. What the writer meant, and, we think, all he meant, was that if he could collect the amount which Allen owed him out of Allen's crop, he would then pay the debt which Allen owed for the timber from which the ties were made.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs in both courts.