**MORAN v. JOHNSON (JOHNSON, Intervener). ***
**No. 4581.**

Court of Appeal of Louisiana.   Second
Circuit.
Dec. 1, 1933.

S. E. Burgoyne, of Monroe, and Frank O. Looney, of Shreveport, for appellant.

Thompson & Dorman, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff, a tank builder in the city of Shreveport, sold and delivered to defendant·

---

*Rehearing denied January 3, 1934.

one steel trailer tank, suited for delivering gasoline in volume, on June 16, 1932, and attached it to a truck of Wm. H. Johnson, which defendant had conditionally purchased. The price of the tank with attachments, etc., was $175 of which amount $70 was paid in cash. The balance was carried on open account without security. The balance on the price was not paid when due, nor for several months thereafter. This suit was filed to recover same. Sequestration issued and the tank was seized; a vendor's lien and privilege thereon was asserted and recognition thereof prayed for.

Defendant made no appearance. Wm. H. Johnson intervened, claiming ownership of the tank by purchase from E. E. Johnson, his brother, and asked for dissolution of the sequestration, with judgment for $50 attorney's fees. In answer to a bill for particulars, he averred that he purchased the tank for $70 cash, on July 30, 1932, by written act of sale, which was attached.

Plaintiff, answering the intervention, denied the validity of said act of sale and denied that intervener owned said tank; that intervener knew the tank had not been fully paid for; that since its purchase by E. E. Johnson it continuously remained in his actual possession, and was used by him for the purposes for which he purchased it, and was thus possessed when seized.

In the alternative, plaintiff pleads that should the court find and hold that defendant did sell the tank to intervener, in that event it is charged that such sale was merely a simulation, entered into for the special purpose of defrauding him and depriving him of his vendor's lien on the tank, and therefore null and void as against his rights; that it was an attempt to divest him of the benefits of said vendor's lien and privilege on the tank.

After trial of the case on the issues tendered by these pleadings, there was judgment of the lower court decreeing intervener to be the owner of the tank in question and condemning plaintiff to pay $25 as attorney's fees for dissolution of the writ of sequestration.

Plaintiff appealed. In this court intervener prays for increase in the allowance of attorney's fees to $50.

■ The averments of plaintiff's answer to the intervention do not clearly disclose that the attack on intervener's alleged title to the tank is (1) simulated, and, in the alternative, (2) fraudulent. This is the usual character of pleading in a revocatory action. Olivier, Voorhies & Lowrey v. Majors, 133 La. 764, 63 So. 323. Essentially, there is a wide difference between a simulated sale or transfer, and one that is purely fraudulent. A simulated sale necessarily is tainted with fraud and consummated by fraudulent motives and for fraudulent purposes by all parties to it; it is not in reality a sale, but a disguise and a sham fraudulently intended to defeat creditors by placing the debtor's property beyond their reach; whereas, a fraudulent sale or one to defraud creditors, may possess all the elements required by law for a valid sale, such as the price, consent, delivery, etc., yet because of the fraudulent nature of the transaction, the illegal motives of the parties thereto, and the injury it will work to creditors, be subject to be set aside by a court because of its fraudulent character. Olivier, Voorhies & Lowrey v. Majors, 133 La. 764, 63 So. 323.

The testimony in the case makes it quite clear that the sale of the tank to intervener by defendant was not simulated. If the witnesses are to be believed, and there is nothing in the record to warrant us in wholly rejecting their testimony, intervener paid defendant $70 in cash for the tank on July 30, 1932, took possession of it (it was already attached to the truck he had taken back from defendant), and from that date until seized had had possession thereof, and used it exclusively in his own business affairs.

■■ Plaintiff's brief is addressed entirely to the alleged fraudulent character of this transfer between brothers. For plaintiff to succeed, it was necessary for him to have adduced proof sufficient in weight and character to overcome the case intervener established in his own behalf. We do not think he has done this. A main point of weakness in plaintiff's case is that it is not charged nor proved that defendant is insolvent, or was in insolvent circumstances when he sold the tank to W. H. Johnson. If insolvent, knowledge of such is not fixed on intervener. It is important to the success of a revocatory action that the vendor be insolvent and acted through fraudulent motives, and that vendee have knowledge of such insolvency and be a party to the fraud. Gumbel & Co. v. Ryan, 118 La. 606, 43 So. 251; Rownd et al. v. Davidson, 113 La. 1047, 37 So. 965; Bastian v. Christesen, 34 La. Ann. 883.

The authority for a revocatory action is found in article 1978 of the Civil Code: "*Contracts in Fraud of Creditors—Intent and Injury Both Essential.*—No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it can not be annulled, although it prove injurious to the creditors; and although made in bad faith, it can not be rescinded, unless it operate to their injury."

It will be noted from the last sentence of this law that a contract, though consummated in bad faith, cannot be rescinded "unless it operate to their [the creditors] injury." The reason of this provision is obvious.

■ The record discloses that intervener was present in Shreveport when the tank was delivered to his brother and attached to intervener's truck, then being used by the brother under some sort of conditional trade between them. It is not shown that intervener knew that all the price was not paid, though it is reasonable to suppose he did know about it. Even if he knew the facts of the sale, this does not necessarily mean that he did know the unpaid balance of the price had not been paid when he purchased the tank; and if at that time he did know the balance had not been paid, this fact would not convict him of any fraud in the matter. Hayes v. Crockett & Maddox, 7 La. Ann. 645; Pierson v. Garmouche, 146 La. 798, 84 So. 59; Carr v. Crow, 10 La. App. 237, 120 So. 783.

■ It is urged that the fact that defendant and intervener were brothers, that the sale between them of a movable was reduced to writing, and that the price paid for the tank was much less than its true value, all argue strongly in support of the charge of fraud against the sale in question.

The mere relationship of brothers is not evidence of fraud. Maurin & Co. v. Rouquer, 19 La. 594. The fact that they are brothers naturally creates some distrust as to the verity of their transactions, when assailed.

The fact that the price paid for a thing was below its actual value does not authorize a conclusive presumption that either party to the sale was actuated by fraudulent motives or intent. Montgomery v. Wilson, 31 La. Ann. 196.

When persons go to the pains of executing a written transfer of movable property, the price of which is declared to be cash, when the law does not, to the knowledge of every one, require that such a transaction be clothed with such solemnity, suspicions are excited; but suspicions alone do not constitute proof. They may be the beginning of proof, but standing alone, amount to little.

Plaintiff alleges that the tank never left the possession of defendant from the date of his acquisition thereof to its seizure. The evidence does not support this charge.

■ There are other circumstances disclosed by the evidence which, in view of all the facts of the case, partake of a suspicious character, but these must yield to the affirmative testimonial proof in the case. Fraud is never presumed. Like all other material issues in a case, it must be established by a preponderance of evidence. This has not been done.

The amount allowed by the lower court as attorney's fees for dissolving the writ of sequestration is fair and reasonable.

The judgment appealed from is affirmed.