(70 South. 231)

No. 21659.

DREYFOUS v. CADE et al.

(Nov. 2, 1915. Rehearing Denied Nov. 29, 1915.)

*(Syllabus by the Court.)*

SALES ☞312—LIEN OF SELLER.

There are various provisions of our law which penalize purchases and sales of property with intent to cheat and defraud; but, when there is no question of insolvency or fraud, a purchaser on credit of movable property may sell it to a third person who knows that he has not paid the price, and the original vendor loses his privilege therefor (save in the case of agricultural products, under certain conditions) when the property passes out of the possession of his purchaser and into the possession of such third person; and, a fortiori, is that true, when, to the knowledge of the original vendor, it then becomes immovable by destination, with no privilege recorded against it. ·

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 871, 876, 877; Dec. Dig. ☞312.]

Case Certified from Court of Appeal, First Circuit.

Action by Leon Dreyfous against Overton Cade and others. Case certified from the court of appeal, First circuit, by the judges thereof, applying for instructions. Question answered in the negative.

Mouton & De Baillon, of Lafayette, for plaintiff. Burke & Smith, of New Iberia, for defendants.

MONROE, C. J. The court of appeal, First circuit, has certified to this court, "for instructions," the question whether the petition in this case discloses a cause of action against the defendant Bellevue Planting Company.

"The substantial allegations of the petition," says the court, "in so far as they bear upon the issues presented in this appeal, are:

"That petitioner, then engaged in retail business, sold and delivered to the said Overton Cade implements of husbandry and other articles and implements used in the cultivation of land, etc., as appear in the detailed exhibits annexed to the petition; that, in liquidation of said indebtedness, Overton Cade executed a promissory note to the order of petitioner, for the sum of $601.38; that said note is still due and unpaid; that, before and during the period petitioner sold to said Overton Cade said implements of agriculture and articles of husbandry, the said Overton Cade was the owner of, and was cultivating, for his own benefit, a certain plantation, situated in the parish of Lafayette, known as Bellevue Plantation, and, in the cultivation thereof, used said implements of agriculture and articles of husbandry, up to the time of the sale of said plantation, hereinafter referred to; that on August 3, 1914, by act No. 46442, recorded in Book S—4, p. 107, of the recorder's office of the parish of Lafayette, said Overton Cade sold to the Bellevue Planting.

.ny, a corporation organized under the laws of the state, domiciled and doing business in the parish of Lafayette, La., the said plantation, known as Bellevue Plantation, situated in said parish, together with the movables and immovables by destination thereon situated, and other things, all the agricultural implements, implements of husbandry (wagons, tools, etc.); that, at the time of the said sale of said plantation to the said Bellevue Planting Company, the implements and articles of husbandry, sold by petitioner as aforesaid, described in detail, and, on the dates and at the prices shown on Exhibit A, hereto annexed, and aggregating a total of $559.01, were on the said plantation and included in said sale and delivered therewith to the said Bellevue Planting Company. Petitioner has been informed, verily believes, and so" leges, that, at the time of said purchase of said plantation, the said Bellevue Planting Company, its officers and agents, well knew that the said agricultural implements and articles of husbandry, purchased by them as aforesaid, had been purchased by the said Overton Cade from petitioner, that the purchase price thereof had not been paid, and that your petitioner was then a creditor of the said Overton Cade for the purchase price thereof; that petitioner is entitled to a vendor's privilege on the said agricultural implements and articles of husbandry described in Exhibit marked 'A,' notwithstanding their use in the cultivation of the said plantation, the same having been purchased by the Bellevue Planting Company, well knowing that they had not been paid for, as aforesaid, and being still in the possession of the said Bellevue Planting Company. Wherefore, petitioner prays for judgment against Overton Cade (and the Bellevue Planting Company), etc., and that a vendor's privilege be recognized in his favor on those agricultural implements and articles of husbandry, described in Exhibit marked 'A,' and made part of the petition, to secure the payment of $559.01, the purchase price thereof, with interest at 8 per cent. from February 1, 1913, and 10 per cent. on the aggregate, as attorney's fees, notwithstanding the sale thereof to the Bellevue Planting Company, and that said implements and articles of husbandry be seized and sold by the sheriff of this parish at public auction, and according to law, in satisfaction of said sum of $559.01 with interest and attorney's fees, pro tanto, and petitioners paid out of the proceeds, by preference and right of priority over all the creditors of the said Overton Cade, and for general relief," etc.

To the foregoing application and statement of the case, "one of the members of the court" (of appeal), appends the following "suggestions, in favor of the correctness of the judgment appealed from," to wit:

"It must be observed that this is not a contest between two creditors of Cade against a third possessor. It is apparent that the present cannot be considered a revocatory action, for the reason that it is not alleged that Cade is insolvent nor that the Bellevue Planting Company bought, with knowledge, for the purpose of defeating the rights of plaintiff or to defraud him out of the 'leged purchase price of the implements, both of which allegations are sacramental in the revocatory action. Hicks v. Thomas, 114 La. 223 [38 South. 148]; Rownds v. Davidson, 113 La. 1047 [37 South. 965]; C. J. art. 1971. If Overton Cade, the purchaser of the alleged implements, is solvent, and has sufficient property to satisfy an execution for the value of said implements, plaintiff has suffered no harm by the sale; hence, from this standpoint, plaintiff shows no cause of action. Nor can it be considered as the hypothecary action, proper, for the reason that plaintiff fails to allege that his privilege on the implements, which became immobilized by destination, when attached to the Bellevue Plantation for its service and improvement (C. C. art. 468), was recorded, and that said implements passed to the third possessor, the Bellevue Planting Company, subject to the said privilege. The alleged notice is not equivalent to registry (McDuffie v. Walker, 125 La. 152 [51 South. 100]; Sorrell v. Hardy, 127 La. 843 [54 South. 122]; Washington v. Filer, 127 La. 870 [54 South. 128]; Haas v. Fontenot, 132 La. 816 [61 South. 831]; Parent v. First Nat. Bank, 135 La. 254 [65 South. 233]. If, on the other hand, the implements continued to remain in the condition of movables, there was no necessity for registry (Const. art. 187); but the vendor's privilege lasted only so long as the property still remained in the hands of the purchaser, Cade (C. C. art. ~~ not extend ed into th such pur barrassed dor. Hay dor's privileg chaser holds ~~ have known of the emces of his immediate vendtt, 7 La. Ann. 645. Venremains so long as purion.. Willard v. Parker, 7 Mart. (N. S.) 4~, Laughlin v. Ganahl, 11 Rob. 143. See, also, Payne & Joubert v. Buford, 106 La. 87 [30 South. 263]. The vendor's privilege on sugar house machinery continues to exist as long as the machinery remains in possession of the purchaser. Pratt v. Cecelia Sugar Company, 135 La. 179 [65 South. 100].

"To hold that a vendor's privilege on a movable follows it into the hands of a third person would seem to be judicial legislation, amending article 3227, C. C."

We have but little to add to the "suggestions" so offered. The Civil Code declares that:

"The debts which are privileged on certain movables are the following: The price due on movable effects, if they are yet in the possession of the purchaser." Article 3217, No. 7.

"He who has sold to another any movable property, which is not paid for, has a prefer-

ence on the price of his property, over the other creditors of the purchaser, whether the sale was made on credit or without, if the property still remains in the possession of the purchaser," etc. Article 3227.

"All sales, contracts and judgments, affecting immovable property, which sh:.." not be so recorded" (i. e., recorded in the p. ish where the property is situated) "shall be utterly null and void except between the parties thereto," etc. Article 2266.

### Act 63 of 1890 provides:

"That any person who may sell the agricultural products of the United States in any chartered city or town of this state shall be entitled to a special lien and privilege thereon, to secure the payment of the purchase money for and during the space of five days only after the day of delivery; within which time the vendor shall be entitled to seize the same in whatsoever hands or place it may be found, and his claim for the purchase money shall have preference over all others. * * *"

Section 1804 of the Revised Statutes declares that:

"If a debtor, who has voluntarily surrendered his property to his creditors, or has been proceeded against for a surrender, * * * shall purchase property for cash, the delivery whereof shall be made to him, and then shall dispose of the same without paying his vendor, * * * any such act shall be * * * presumptive evidence of fraud."

And section 825, R. S       ets 166 of 1894, 94 of 1896, and '          '2, contain various provisions conc̸          :cquisition and disposition of pro̸          ,.,.1 intent to cheat and defraud.   k̸.       "instant case, there is no allegation of either insolvency or of intent to cheat or defraud, and the case is not within the exception (provided by Act 63 of 1890) to the rule enunciated in C. C. art. 3217, to the effect that the privilege of the vendor of movable property exists only so long as the property remains in the possession of the vendee. In Burdeau v. Creditor, 44 La. Ann. 20, 10 South. 399, this court, referring to the provisions in R. S. § 1804, concerning purchases, by an insolvent, for cash, and sales of the property without payment of the price, found occasion to say:

"Certainly that provision of the law was not intended to apply to sales of property, or goods and effects, on terms of credit, * * * for it is a precept of our Civil Code that the ve.    . lien on movable property is lost by a sale ˑˑˑnd delivery thereof to another."

And after quoting C. C. art. 3227, and citing certain adjudged cases, the opinion proceeds:

"Evidently, there is no prohibition against a sale being made by a vendee of goods which are purchased on credit; and no fraudulent intent can attach to the act, though his contract be thereby violated."

Another reason (if another can logically be 'ded) why the plaintiff herein has no such privilege as he is seeking to enforce is that the movables in question have not only passed out of the possession of his vendee, Cade, but, having been placed, by the latter, on his plantation, for its service and improvement, they, to the knowledge of the plaintiff, became immovable by destination, and the plantation, of which they became part, having been sold by Cade to the Bellevue Planting Company, the contract out of which the privilege arose was "utterly null and void" as to that company, even if it could otherwise have affected it, because of its not having been recorded in the parish where the plantation is situated. C. C. art. 2266; Const. art. 186.

In McDuffie v. Walker, 125 La. 152, 51 South. 100, it was held (quoting from syllabus):

"The law, which declares that all contracts affecting immovable property which shall not be recorded in the parish where the property is situated 'shall be utterly null and void except between the parties thereto,' * * * is clear and unambiguous. It was intended to settle in this state the question whether knowledge, possessed by a third person, of a contract affecting immovable property, should be considered, so far as such person is concerned, equivalent to the registry of the contract, and it settled that question in the negative. * * * Fraud cuts down everything; and if, in a given case, it should be alleged and proved that a mortgagee or vendee had been induced by fraudulent representation * * * to allow his act of mortgage or purchase to remain unrecorded and that a loss had resulted therefrom or was threatened, such mortgagee or vendee would, no doubt, be granted relief as against the perpetrator of the fraud.

It cannot, however, be said that a third person perpetrates a fraud merely by treating as void, as to himself, a contract which the law in terms declares 'shall be utterly null and void, except between the parties thereto."

Our answer to the question here certified, then is: No.