BEAUREGARD FURNITURE CO.

 vs No. 7423.

HARRY KATZ & al.

7423

Syllabus.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit. The petition alleges that the plaintiff sold and delivered to Joseph J. Carbo sundry articles of furniture for the price of $382, in part payment of which the said Carbo paid $185, leaving a balance due of $197; that thereafter the said Carbo sold and delivered to Harry Katz "in bulk and out of the usual course of trade\ the entire contents of his premises 1225 Delachaise Street including all of the property and the merchandise purchased by the said Joseph J. Carbo from petitioner, for less than the sum of $80; that the said Harry Katz in purchasing said goods, wares, and merchandise did not exact any sworn statement from the vendor as to the amount due for said effects, and wholly failed to comply with the laws of Louisiana relative to the purchase in bulk out of the usual course of trade, as was done in this purchase, with the full knowledge that the said goods so purchased by him from the said Joseph J. Carbo were unpaid for, and that he therefore becomes liable to petitioner for the said amount; that the said Joseph J. Carbo purchased the said goods, wares, and merchandise so sold to the said Harry Katz on credit, and that he disposed of same out of the usual course of business with the intent to cheat and defraud petitioner, and petitioner is informed and so alleges that the said Harry Katz had full knowledge of same"; petitioner further alleged that he had a vendor's privilege on said furniture, and he prayed for judgment against said Harry Katz for $197.

The defendant filed an exception of no cause of action which was maintained, and the plaintiff has appealed.

We are of opinion that the petition discloses a double cause of action, one under Article 2324 (2304) of the Civil Code, and another under Act 114 of 1912 p 135.

Article 2324 reads as follows:

"He who causes another person to do an unlawful act, or assists, or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act".

Accordingly it has been held that where the master of a steamer fraudulently assists a debtor in removing his property out of the reach of a creditor, with a knowledge of the rights of the creditor, he will be liable to the creditor for the amount of his debt. 8 R., 428; 12 R. 20.

It has also been held that where a purchaser of the contents of leased premises, with a knowledge that rent is due, removes the contents, he makes himself liable for the payment of the rent. 2 A., 14. Affirmed in 30 A., 202; 139 La., 411; 47 A., 754; 43 A., 1082; 1 A., 80; 24 Cyc. 1267; 18 A.& E. E. of Law p 350.

But the case of Seelig vs Dumas, 48 A., 1494, is identical with the present case. The Court said, p 1498:

"Granting that they (the contracts) evidenced an absolute sale as he (defendant) declared them to have been, he knew (upon that hypothesis) that a large portion of the price which had been fixed between Theresa Hamilton and the plaintiff was still unpaid and stood secured as to payment by vendor's privilege, and he deliberately and intentionally, with a view of benefiting himself and cutting off plaintiff's privilege, purchased the furniture, and withdrew it from plaintiff's pursuit xxx he purchased for $1180 and took possession of furniture on which there existed, to his knowledge, at the time of his purchase, a vendor's privilege in favor of the plaintiff".

Act 114 of 1912 p 135 is entitled: "An Act to define and punish certain misdemeanors in trade and commerce, and xxx also to make it a crime for anyone to purchase goods, wares,

166

or merchandise on credit and sell, hypothecate, or dispose
of same out of the usual course of business, with intent to
cheat or defraud the vendor or seller; and also &c.".

Sec. 2 of the act reads as follows: "That whosoever
shall purchase goods, wares, or merchandise on credit and
shall sell, hypothecate, pledge, or otherwise dispose of same
out of the usual course of business and with the intent to
cheat or defraud the seller or vendor, shall be guilty of a
misdemeanor, and on conviction thereof shall suffer fine in
the discretion of the Court and imprisonment not less than
six, nor more than twelve months". *See also R.S. 825—*

By that section it is made an unlawful act for any
one to purchase goods on credit and to sell the same out of
the usual course of business and with the intent to cheat or
defraud the seller; and by Article 2324 of the Code any one
who assists another to do an unlawful act is answerable for
the damage caused by that act. Carbo certainly committed the
unlawful act denounced by the Section 2, if the allegations of
the petition are true, and Katz assisted him. He is therefore
answerable in solido with Carbo.

Section 4 of the Act may be confined, as contended by
the defendant, to sales in bulk made by retail merchants. But
no such limitation is intended by Section 2. It establishes
a misdemeanor "in trade and commerce" and applies to all whom-
soever who shall purchase goods on credit and sell them out of
the usual course of business with intent to defraud. The in-
terpretation contended for by defendant would permit a person
not engaged in retail business to buy movable property on credit,
and then sell it and defraud the vendor with impunity; in other
words, what would be criminal in one in the retail business,
would be innocent in one not in that business. But what the law
intended to punish is the nature of the crime more than the
quality of the individual who is guilty. *51 a 0223)*

The case of Dreyfous vs Cade, 138 La., 297, applies to a
sale in the regular course of business and devoid of the charge
of fraud.

It is therefore ordered that the judgment be reversed, and
that the exception of no cause of action be overruled - and defen-
dant to pay costs of appeal.

167

[handwritten] ... and

St. Paul & Dunkelspiel, J J

We concur in the Decree, and also in the opinion, except as to the applica-
bility of Act ... of 1912 —