Plaintiff alleges that on the 17th day of January, 1949, he sold a 1947 Chevrolet convertible automobile to the defendant Hill, and for the purchase price, received a check from Hill in the amount of $1500. It appears that this check was not good and was given merely as evidence of indebtedness for the purchase price. It is also shown by the evidence that at the time, Muse was indebted unto Hill, a secondhand car dealer, as the result of a prior transaction, and that the car was sold to Hill in order to enable him to sell it or to borrow money under a chattel mortgage, so that Hill could take out the money owed him by plaintiff Muse and turn the excess over to Muse on the purchase price. A bill of sale was executed by Muse to Hill under date of January 13, 1949 (the date on which the sale was apparently made — the check being executed some four days later). On this bill of sale, which evidenced a cash sale for $1400, Hill borrowed $1260 from E. J. Gonzales Finance Company and executed a chattel mortgage on the Chevrolet automobile as security for the loan. It appears that later on Muse finished paying in full his prior debt to Hill and he then instituted suit against Hill for $1500 for the purchase price of the Chevrolet automobile and prayed that he have judgment against Hill in that sum with recognition of his vendor's lien and privilege on the automobile. In connection with his suit, he had the car sequestered, and thereafter, the Gulf States Finance Corporation, doing business as the E. J. Gonzales Finance Company, filed a petition of intervention, setting forth the chattel mortgage given it by Hill for the loan of $1260, and alleging further that on February 11, 1949, the defendant was indebted unto it on ten other promissory notes secured by chattel mortgages on ten other vehicles, and that a dation en paiement was executed by the defendant Hill to the intervenor of eleven automobiles, including the Chevrolet convertible coupe in question, and that pursuant thereto, all of the vehicles were delivered and accepted by it, and thus, it became the owner of all these vehicles; and that, therefore, the vendor's lien in favor of plaintiff, if it ever existed, was extinguished by the transfer of the title of the movable property unto it. It may be noted that plaintiff Muse never filed any answer or pleading to the petition of intervention.
The defendant filed an answer to plaintiff's petition, alleging that the consideration for the sale of the Chevrolet to him was the sum of $875 owed by plaintiff to him, plus the authority for him to sell the car for the best price obtainable and to deduct the $875 and commission and to thereupon turn the balance over to plaintiff; that in the deal, the defendant was further authorized to "floor-plan" the car if he so desired; that the act of sale was executed for the sum of $1400 on January 13, 1949, and that he gave a check to the plaintiff for the sum of $1500 on January 17, 1949, but that both he and plaintiff knew it was not good and was merely given as security. On the trial of the case, it was stipulated that defendant's answer to intervenor's demand was a general denial.
The trial of the case resulted in a contest between the intervenor and the plaintiff, the intervenor contending that the act of agreement between it and Miles E. Hill, of February 11, 1949, constituted a dation en paiement, or in the alternative, a pledge, for the sum of $8200 owed to it by Hill, as shown by eleven notes secured by chattel mortgage, including the note of $1260 and chattel mortgage on the Chevrolet automobile in question; that this dation en paiement, *Page 921 
or pledge, had fully extinguished the vendor's lien and privilege of the plaintiff. Plaintiff contended that the agreement did not constitute either a dation en paiement or a pledge, and that consequently, his vendor's lien and privilege was in full force and effect.
The trial court, giving a lengthy written opinion therefor, came to the conclusion that the agreement did not constitute either a dation en paiement or a pledge, and accordingly, dismissed the intervenor's petition of intervention at its cost and rendered judgment in favor of plaintiff and against the defendant for $1500 with legal interest from judicial demand until paid and recognizing plaintiff's lien and privilege on the Chevrolet convertible coupe. The intervenor has appealed.
Defendant Hill also appealed but has abandoned his appeal, and therefore, defendant Hill is an appellee, not an appellant, in this appeal, and the question for this court to decide is mainly between the intervenor and the plaintiff. The crux of that decision depends entirely on the interpretation to be given to the agreement between Miles E. Hill and Gulf States Finance Corporation, doing business as E. J. Gonzales Finance Company, said agreement being dated February 11, 1949, and being summarized as follows:
It is set forth that Miles E. Hill is indebted unto the Finance Company in the full sum of $8200 represented by demand notes secured by chattel mortgages, which are listed in detail in the agreement.
It is further set forth that said notes are past due and that payment thereof has been demanded and that to settle and compromise the matter, the parties have agreed as follows:
"First, said Miles E. Hill has and he does hereby transfer, surrender and release the aforedescribed automobiles to the said Finance Company;
"Second, for and in consideration of said transfer, release and surrender the said Finance Company has and it does hereby release said Miles E. Hill from any obligations upon the aforedescribed notes and does further agree as follows:
"(a) The said Miles E. Hill shall have sixty days from date hereof in which to redeem said automobile;
"(b) The said Hill may sell and dispose of any of said automobiles for not less than the amount of the mortgages above referred to resting thereon and the entire proceeds of such sale, regardless of whether it exceeds the amount of said mortgage, will be applied to the above referred to $8,200.00;
"(c) The said Finance Company may at any time sell any one or more of said automobiles for not less than the current N.A.D.A. retail sales value and upon such sale, the entire proceeds of sale, less the cost of sale including commission, shall be applied to aforesaid $8,200.00;
"(d) One per cent of the sale price of any automobiles sold during the existence of this agreement shall be applied to the cost of insurance thereon;
"(e) At the expiration of this agreement, or at any time during the said sixty day period, the said Miles E. Hill shall have the right to redeem said automobiles upon payment of the remainder of said $8,200.00 after deduction of the proceeds of any such sales and insurance."
With reference to whether or not the agreement constitutes a dation en paiement, the trial court considered the following provisions of the Civil Code:
"Article 2655. The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due."
"Article 2567. The right of redemption is an agreement or paction, by which the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it."
It is to be noted that in this case there was no intention of passing the title to the creditor and that the debtor retained some control over the property, in that he had a right to sell the automobiles for the price of the chattel mortgages existing thereon. It is to be noted also that Mr. Gonzales, head of Gonzales Finance Company, admits in his testimony, that there was no intention of selling the property for the debt owed to the finance company. *Page 922 
It is true that in the case of Pomez v. J. B. Camors and Company, 36 La. Ann. 464, the court held that "a debtor who transfers securities in full ownership to his creditor in settlement of the latter's claim with the right of redemption within a specified time, loses all rights and titles to the ownership of the property if he fails to redeem the property within the prescribed delay and that such a contract is one of sale and not of pledge."
In the case at bar, we do not have a transfer in full ownership for the reason that the debtor retained the right of selling the automobiles and applying the purchase prices to the debt.
See also Bourg v. Lopez et al., 36 La. Ann. 439, which involves an agreement by which one transferred to another certain movable property with the proviso and condition that the latter was to sell it, pay himself what the transferror owed him, and distribute the residue to certain named persons, and wherein the court said: "This is not a sale. It has no element of that contract. It did not divest ownership and, therefore, did not transfer it. Neither is it a giving in payment. Full dominion over the property, with power to do with it as he listed, is not conferred by that instrument. It cannot rightly be called a pledge, but if it were that would not protect the property from the pursuit of other creditors. Auge v. Variol, 31 [La.] Ann. [865], 866; Pickens v. Webster, [31 La. Ann.] 870; Horner v. Dennis, 34 [La. Ann.] 389. Like the contract in Herold v. Stockwell, 32 [La. Ann. 949], 951, it has no name and is at most a bailment whereby Hobert bound himself to distribute the proceeds of the sale of named persons in sequence, and thus held as trustee for them. * * *"
In the case of Allen, Nugent Co. v. Buisson, 35 La. Ann. 108, as stated by the trial court:
"The plaintiff sold a number of bales of cotton to the defendant the price of which was never paid. Thereafter the cotton was delivered by the defendant under pressure to the intervenors, the proceeds to be applied to an indebtedness of his to them, arising from the sale of other cotton which they had made to him at an earlier date. It was a suit between the plaintiff who had sold the cotton to the defendant and the intervenors, the defendant having failed to appear and make any answer. The intervenors contended that the cotton was given to them in payment of their claim. The Court held that the burden was upon intervenors to show that the cotton had been transferred to them in payment of the indebtedness and held that they had failed to do so. In this connection the Court stated the following: 'It is true that the opponents were the creditors of the defendant and that the cotton was delivered to them by his order; but the circumstances under which the transaction took place do not establish an intention, a consent, in the parties to give and receive the cotton in payment of the debt. The evidence does not show that the cotton was transferred for any specified price, agreed upon and fixed for the giving in payment, which is assimilated to a sale.'
"The Court, accordingly, held that the fact that the vendee had delivered the cotton to a creditor of his, the proceeds to be applied to the payment of his debt, cannot be set up by such creditor to justify a claim to the ownership of the cotton."
It is upon these facts, reasoning and the cited cases that the presiding judge ruled that the contract was neither a dation en paiement (giving in payment) or a pledge. Whatever may be the classification of this contract, it certainly is a legal and enforceable contract and not against public policy or morals.
The following facts are undisputed and are reflected by the record. On January 13, 1949, plaintiff Muse was indebted unto defendant Hill in the sum of $875. Hill was in need of money. In order to pay Hill, Muse delivered the automobile in contest to Hill; at that time Muse executed a contract of sale, stating that Hill had purchased the automobile for $1400. Hill received the automobile with the definite understanding between the plaintiff and defendant that Hill could sell or mortgage the automobile. In the event of sale or *Page 923 
mortgage, Hill was to pay himself and return to plaintiff the overplus of the proceeds. On the same day, Hill borrowed from the intervenor the sum of $1260, giving a chattel mortgage on the automobile in favor of intervenor. Subsequently, Muse paid out his indebtedness to Hill and on January 17, 1949, Hill gave Muse his personal check for the sum of $1500 as evidence of his indebtedness to Muse. Prior to February 11, 1949, Hill had become indebted to intervenor to the amount of $8200, secured by chattel mortgages on eleven automobiles, one of which was the automobile in question. Finding the relations unsatisfactory, intervenor had Hill to remove all of the eleven automobiles from his used car lot to intervenor's used car lot, where they were under constant care and custody of intervenor's employee or employees. On February 11, 1949, the contract under consideration was executed. The automobile, at the time of sequestration and seizure was on intervenor's used car lot, where it had been prior to and after February 11, 1949.
In considering this contract, we have to find the intention of the parties. From the evidence, it must be deduced that the parties did not construe the contract in any other light but one of a conditional sale, not transferring title until the expiration of a sixty day period. By and under this contract, the evidence is uncontradicted that defendant Hill parted absolutely with the possession of the automobiles, including the automobile in question, a requisite of a pledge, the subject matter being a movable. The defendant Hill parted with the possession of the automobiles for a definite sum, the stipulated consideration being $8,200, another requisite of a pledge. Therefore, the contract is in the nature of a pledge.
The plaintiff Muse contends, and which, contention was upheld by the District Judge, that by the provision (b) of the contract, supra, Hill had the tentative possession of the automobiles regardless of the fact that the said automobiles, prior to and at the time of confection of said agreement, had been removed from Hill's lot and placed on intervenor's lot and in its possession, thereby destroying the effect of a pledge.
The law requires, as an essential element to the contract of pledge, that the creditor be put in possession of the thing given to him in pledge, and, consequently, that actual delivery of it be made to him. In the case at bar, the undisputed testimony is that the automobiles were actually delivered to the intervenor. There is no evidence in the record showing that any of the automobiles actually delivered to the intervenor was ever redelivered to defendant Hill. The automobile in question was always in the custody of the intervenor from the time of delivery prior to and on February 11, 1949, the date of contract, to the time of sequestration and thereafter to the trial of the suit. However, conceding for the mere sake of argument that Hill had the tentative possession under provision (b) of the contract of the automobile in question, yet, under the ruling of the Supreme Court in the case of Foote v. Sun Life Assurance Co. of Canada, La. App., 173 So. 477, 481, "The law is also well settled that the pledgee does not lose his pledge where he consents that, for a limited time or for a specific purpose, the property pledged be placed in the hands of another person or even in the hands of the pledgor himself." Citing and quoting from the case of Conger v. City of New Orleans, 32 La. Ann. 1250, to this effect: "Possession, though essential to the validity of the pledge, need not be always in the creditor. It is sufficient that the thing pledged be in the possession of one occupying ad hoc, the position of a trustee. The debtor himself may, in some cases, be considered as such trustee and be given possession of the thing by him pledged,provided his tenure be precarious and clearly for account ofthe creditor." (Italics ours.)
Clearly under the provision (b) the possession of Hill and his authority to sell the disputed automobile was precarious and for the account of intervenor; furthermore, it was for a limited time and for a specific purpose. It cannot be said that the *Page 924 
intervenor ever lost any of its rights under this contract.
Granting, for the mere sake of argument, that Muse had retained a vendor's lien and privilege on the automobile when he parted with the title and possession of the automobile, we now pass to the effect to be given this contract in regard to the vendor's lien and privilege quoad the intervenor. In other words, was the vendor's lien and privilege lost by virtue of this contract and the facts in this case?
It is admitted that prior to the execution of the contract, but after the physical delivery of the contested automobile by Hill to intervenor, the intervenor had been informed by the plaintiff Muse that Hill had not paid Muse for the automobile. It is now well settled that the mere fact that a person has knowledge of an existing vendor's lien on a movable does not affect any rights that he acquires in the property subject to such lien. The leading case on this subject is the case of Pierson v. Carmouche, 146 La. 798, 84 So. 59, wherein the Supreme Court said in answer to the following question propounded to it by the Orleans' Court of Appeal:
Q. " 'May a purchaser on credit of movable property validly give it in pledge to a third person, who knows that he has not paid the price (but is otherwise in good faith), so as to vest in the pledgee a right superior to that of the vendor, whose privilege thereupon ceases by reason of the property having passed out of the possession of the vendee?'
"We answer, Yes. In Dreyfous v. Cade, 138 La. [297], 298, 70 So. 231, this question was very fully discussed, with full reference to authorities, and was decided in the affirmative."
Whatever this contract be classified, we refuse to classify or determine it save to say that it is a valid and enforceable contract, under the decision quoted supra, and the case of Dreyfous v. Cade, 138 La. 297, 298, 70 So. 231, and the cases therein cited, we are of the opinion that the vendor's lien and privilege on the contested automobile that the plaintiff Muse may have had was lost when the said automobile was delivered by Hill to intervenor and when the contract was executed; in other words, when Hill definitely delivered the possession of the said automobile to intervenor and the contract was executed. The District Judge was therefore in error in recognizing plaintiff Muse's vendor's lien and privilege.
In so far as intervenor's demand, since we do not classify this contract, we determine it best to dismiss its demand without prejudice.
As to the costs, it is our opinion that the costs of plaintiff's demand be taxed against Hill and the costs of the intervention be equally divided and paid by plaintiff Muse and the intervenor Gulf States Finance Corporation, including the costs of this appeal.
For these reasons assigned, it is ordered that the judgment appealed from is reversed, annulled and set aside; and it is further ordered, adjudged and decreed that the said judgment is recast to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, R. H. Muse, and against the defendant, Miles E. Hill, in the sum of $1500, with legal interest thereon from judicial demand until paid, with costs of this demand.
It is further ordered, adjudged and decreed that the intervention of Gulf States Finance Corporation, doing business as E. J. Gonzales Finance Company, is dismissed as in case of non-suit.
It is further ordered, adjudged and decreed that all costs of intervention be equally divided and paid by plaintiff Muse and intervenor, Gulf States Finance Corporation, including the costs of this appeal. *Page 925